1795.

---

## GEORGE ARMSTRONG *v.* WILLIAM M'GHEE.

*A*RMSTRONG appearing disgusted with a valuable horse, that, after a hard ride, seemed jaded and lame, offered him for sale to several persons, for a trifle, and to *M'Ghee*, for 5*l.* *M'Ghee* agreed, and by *Armstrong's* direction, took the horse home to his stable. Both lived in *Greensburgh*, and were on terms of intimacy. At the time, some supposed *Armstrong* in jest. He said so himself afterwards, and demanded the horse back, as supposing *M'Ghee* understood him to have been in jest. However *M'Ghee* chose to keep the horse; and *Armstrong* brought a replevin for him. *M'Ghee* claimed property, and retained the horse. During the suit, the horse died, having been very hard ridden, in a hot day, and drunk cold water.

*Brackenridge* and *Young*, for the plaintiff. A contract must have an agreement of the mind, understood by both parties. Inadequacy of price, known to the other party, is a ground to set aside a contract. So is imposition, as selling a horse for a barley corn for the first nail, in his shoes, and so in a duplicate ratio for every other. A contract to be carried into effect, must be fair, reasonable, and free from circumvention.

1 *Powel Contr.* 6 &c. 330.

*Purviance* and *H. Ross*, for the defendant.

PRESIDENT. A contract may be made by any signs, which shew an agreement of mind, though there be neither words nor writing: if there be understanding, it may be made between two men deaf and dumb.

There is a difference between carrying into effect an incomplete contract, and annulling a complete one. When a court of Chancery is called on for its aid, to carry into effect an incomplete contract, they will, before they give that aid which the complainant requires, compel him to do equity. If *Armstrong* had been over-reached, and the contract incomplete, perhaps a court of equity would not carry this contract into effect.

*S 3*

[Instructing the jury.

1795.    Here is a complete contract; and the queſtion is not, whether it ſhall be carried into effect, for that has been done already; but whether it ſhall be annulled, and the parties brought back to where they were, before it was made. Did both parties underſtand it as a binding contract? Though *Armstrong* did not, and though *M'Ghee* knew that he did not; if he gave no ſigns to *Armstrong*, that *he* did not underſtand it as a binding contract; why did *Armstrong* truſt him? And if he truſted him, why ſhould he come here now, to ſave himſelf from the conſequences of ſuch groſs folly? Is it for wanton and idle purpoſes, like this, that you and we ſit here? It is one thing, whether *M'Ghee* has acted ungenerouſly, unneighbourly, and unhandſomely; and another thing, whether he has acted illegally, ſo as to raiſe no obligation, or veſt no right. This contract, as far as ſigns and all the formal parts of a contract can go, is complete: and, if there be no fraud, I do not ſee how it can be annulled. If *M'Ghee* gave *Armstrong* ground to believe, that he conſidered this contract, which to all appearance is a complete one, as a mere ſham or jeſt, conveying no right; he muſt take it as he then gave ſigns that he underſtood it, and remain a mere truſtee to *Armstrong*, and bound to deliver up the horſe when required. In this caſe he never had any right: the horſe continued to be the property of *Armstrong*: and ſo you will now ſay.

As to damages, it is proper to conſider what the one party loſt, and what the other gained.

The jury after ſitting for the remaining part of the day, and the whole of the ſucceeding night, were ſent for into court next day, and not having then agreed on a verdict, they were diſcharged by conſent.

At next term this cauſe was tried again; and a verdict was found for the plaintiff for 8*l.* damages.