PLATE *v.* DURST.                63

# CHARLESTON.

PLATE *v.* DURST.

Submitted January 30, 1896—Decided April 4, 1896.

IMPLIED CONTRACT—RECOVERY FOR SERVICES RENDERED—RELATIONSHIP OF PARTIES.

Where a minor, residing with a near relative, other than her parent, is led to believe, by the kindness, conduct, and conversations, in jest or in earnest, of such relative, that she is to receive compensation for her future services rendered in promotion of his business, in some form, and, in expectation of such compensation, she faithfully performs such services, and he afterwards discharges her without compensating her in the manner in which he led her to believe he would do, and denies all liability to her, she is entitled to recover the actual value of such services, in an action of *assumpsit*, even though such relative testifies that such promises were made in jest, and he had no expectation or intention of recompensing her for her services, but was only acting towards her *in loco parentis*.

W. P. HUBBARD and H. M. RUSSELL for plaintiff in error, cited 27 W. Va. 258; 5 Mo. 46; 46 N. H. 151; 145 Mass. 361; 116 U. S. 491; 38 W. Va. 291; 20 W. Va. 23; 34 S. C. 255; 33 W. Va. 417; Wood, Master & Serv. § 109; 96 N. C. 149; 42 Ind. 285; 22 S. W. Rep. 557; 18 S. W. Rep. 517; 126 Pa. St. 404; 34 S. C. 255; 40 W. Va. 138.

CALDWELL & CALDWELL and ERSKINE & ALLISON for defendant in error, cited 2 Pars. Contract (5th Ed). 46; 27 W. Va. 258; Wood, Master & Serv. §§ 67, 72, 76, 100, 189; 3 Am. & Eng. Enc. Law, 860; 8 Id. 658, 660, 661; 17 Id. 336, 339; 28 W. Va. 378; 385, 386; 31 Gratt. 52; 20 W. Va. 23; 38 W. Va. 283; 31 W. Va. 340-1; 41 W. Va. 481; 38 W. Va. 456, 645, 727; 41 W. Va. 445; 37 W. Va. 606; 20 W. Va. 23; 63 Conn. 530, 543; 38 N. E. Rep. 826; 36 N. E. Rep. 919, syl. pts. 3, 4; 97 N. C. 280; 22 N. E. Rep. 777; 67 Hun, 472; 22 W. Va. 120; 13 Pick. 1; 72 Hun, 472; 59 N. W. Rep. 159; 30

Vt. 571; 35 W. Va. 389; 40 W. Va. 138; 22 S. W. Rep. 557; 29 Pa. St. 369; 15 Barb. 494; 34 Tex. 291; 69 Pa. St. 144; 44 Iowa, 466; 66 Barb. 507; 59 Pa. St. 347, 349; 121 Ind. 255; 27 Iowa, 99; 38 N. E. Rep. 426; Clark, Contracts, 134, 785; 1 S. E. Rep. 366; 76 Mich. 448; 52 N. W. 257; 27 N. E. Rep. 132, 511.

DENT, JUDGE:

George L. Durst, defendant, on writ of error to the judgment of the Circuit Court of Ohio county rendered in favor of Amelia C. Plate on the 26th day of February, 1895, for the sum of eight hundred and seventy seven dollars and forty cents interest and costs, assigns the following errors, to wit: "(1) The said circuit court erred in admitting certain evidence against your petitioner's objections, on the trial of the cause before the jury. (2) The circuit court erred in excluding from the jury, upon the trial of the cause, certain evidence offered by your petitioner. (3) The circuit court erred in overruling your petitioner's motion, made when the plaintiff rested her case, to exclude the plaintiff's evidence from the jury. (4) The circuit court erred in giving to the jury certain instructions against your petitioner's objection, and in refusing to give certain instructions request ed by your petitioner, and in modifying certain other instructions requested by your petitioner. (5) The circuit court erred in overruling your petitioner's motion to set aside the verdict of the jury and grant him a new trial."

As to the third assignment, it is sufficient to say that the law concerning the same has been settled by repeated decisions of this Court to the effect that a motion to exclude the plaintiff's evidence is waived by the defendant when he elects to proceed with the case, and introduces evidence in defence. *Core* v. *Railroad Co.*, 38 W. Va. 456 (18 S. E. 596) followed by a number of cases decided, but not yet reported.

Able counsel hotly contested the present case from beginning to end, and allowed no point of advantage to escape their ever vigilant eyes. So that every possible chance for an exception is presented for the consideration of this Court. The main and important question for consideration—and,

PLATE *v.* DURST. 65

indeed, all other questions—arise on the motion to set aside the verdict of the jury and grant a new trial. No one informed of the circumstances could, in any view, consider the damages excessive or exorbitant. The proof is abundant to establish the nature and value of the services rendered, and there is therefore but the naked legal question as to whether the evidence is sufficient to justify any recovery; in other words, whether the services, however valuable, were given gratuitously in excess of voluntary gifts on the one part, and received on the other without any expectancy of recompense or remuneration.

The material facts in the case are as follows, to wit: When the plaintiff was about twelve years of age, in the absence of other home, she went to live with the defendant, her brother-in-law. This was in the year 1885. For the first three or four years she was sent to school, and during the whole period she lived in the family as the defendant's own daughter might have done. She was furnished with a comfortable room, with suitable clothing and other necessaries, was supplied with money for shopping and other purposes, accompanied the defendant's wife on various pleasure trips, went to the World's Fair with money furnished by the defendant, received numerous presents at Christmas and other times, and was treated by the defendant with great kindness and consideration in every way. On her part, the plaintiff, rendered services such as might have been required and expected from a daughter; attending to the marketing, and assisting in the care of young children. In addition to these services the plaintiff assisted the defendant in his store, attending to customers, looking after entertainments the defendant had in charge, and doing whatever else the exigencies of the business, and her own capacities, from time to time suggested. The defendant and his wife had an unfortunate misunderstanding, and in August, 1894, the defendant's wife, with her two young children, went to Oakland, accompanied by the plaintiff and another friend. The misunderstanding had existed for some time, and there had been more or less coolness between the plaintiff and defendant on account of it. The Oakland party made their preparations without informing

the defendant, and started off with no more notice to him, according even to the plaintiff's claim, than a statement, just as they were going out of the door, that they were going to Oakland. The defendant resented this, and when the plaintiff and the others returned he told the plaintiff that she could leave his home. She did so, and soon afterwards instituted this action.

During all the time of the plaintiff's stay with the defendant, she had never received or demanded any pay for her services. The money, clothing, and presents which she received she herself says were not regarded as wages. She never brought forward in any way the question of compensation, and, even after the alleged conversation on which the case was made to turn in the court below, no visible change was made in the relations between the parties. According to the plaintiff's testimony, a conversation took place four years before August, 1894, late one evening, in the store of the defendant. This conversation was repeated several times in the plaintiff's testimony, and was given by her as follows: "Mr. Durst asked me if I was tired. I said, 'Yes, sir,' and he said, 'How long have you been with me now?' and I told him, 'Five years;' and he said, 'Well, when you are with me ten years, I will give you one thousand dollars.' " On another occasion, defendant remarked that when she (the plaintiff) should get married he would give her one thousand dollars, and a five hundred dollar diamond ring.

Defendant does not positively deny either of these conversations, except as to the time of the first, but intimates that he was not in earnest, but jesting. It must be admitted, in any view of the matter, that this was jesting on a very serious subject to this unfortunate and parentless young girl—still, in the eyes of the law, an infant—engaged early and late, week days and Sunday, at home and abroad, actively, earnestly, and faithfully endeavoring to promote the worldly interest of the defendant. Jokes are sometimes taken seriously by the young and inexperienced in the deceptive ways of the business world, and if such is the case, and thereby the person deceived is led to give valuable services in the full belief and expectation that the

PLATE *v*. DURST. 67

joker is in earnest, the law will also take the joker at his word, and give him good reason to smile. The law discountenances deceit, even practiced under the form of a jest, if the weak, immature, or confiding are thereby imposed on to their injury. Where the law raises a presumption of gratuitous service, because of the relationship of the parties, the person rendering such service must rebut such presumption by either showing an express contract, "or such facts and circumstances as will authorize the jury to find the services were rendered in expectation by one of receiving, and by the other of making, compensation." This is the rule as announced in the case of *Riley* v. *Riley*, 38 W. Va. 290 (18 S. E. 569) and followed in the case of *Cann* v. *Cann*, 40 W. Va. 138 (20 S. E. 910).

In this case there is no express contract on which the plaintiff could sue, and hence it must be determined whether, in the absence thereof, the facts and circumstances warranted the finding of the jury. The services were rendered in advancement of the defendant's business. They were valuable and necessary, and he so regarded them. Up until she was seventeen, nothing was said as to compensation; but she was clothed, fed, furnished spending money, and received some so called presents from the hands of the defendant. She had then arrived at an age when she had become quite proficient in his business—that of a caterer and confectioner; was very useful to him, and diligent and attentive about his business. It was also quite time for her to begin thinking about her own future. He, as a sensible business man, undoubtedly realized this fact, and also that he was receiving gratuitously services to which he was not wholly entitled, and that, as soon as she became fully informed as to her own worth and rights, she would ask compensation at his hands, or seek other employment. Under such circumstances as this, he, in a sympathetic manner, approached plaintiff, and asked her if she was tired, and she answered. "Yes." He then asked her how long she had been with him, and she replied, "Five years." He said, "When you are with me ten years, I will give you a thousand dollars." And at another time, admitted by the defendant, he told her that when she got married he would

give her one thousand dollars and diamond earrings. For five years she had given unremitting service to his affairs, and he, evidently moved by a righteous obligation to do so, temporarily, inspires her with the hope of future reward. The defendant says he was not in earnest, but only jesting. Admitting such to be the case, these conversations, whether he was in earnest or not, were calculated to mislead her, and leave the impression on her mind that in any event he would deal justly by her, and fully compensate her for her services; and in this manner he retained her in his employ until it suited his convenience to discharge her without compensation, which he did, to say the least, in an unkind and heartless manner, ill becoming a stranger, much less a brother-in-law.

And now it devolves upon us to say whether she is entitled to pay for what her services were actually worth, or does the law, from the fact that he was only misleading her, and never intended to pay her, excuse him from doing so ? A person is estopped from denying the sincerity of his conduct, to the injury of a person misled thereby. We therefore must conclude that these promises, in spite of the declaration of the defendant to the contrary, were made in sincerity, as an inducement to her future service. As these promises are not here sued on, the question of the statute of frauds does not arise; but, the plaintiff having been prevented by the defendant from performing her part of the undertaking, she is entitled to recover for the services already rendered, in view of the compensation promised. 2 Tuck. Bl. Comm. 131; 1 Story, Cont. §§ 12, 18, 21 ; *Brooks* v. *Scott's Ex'r*, 2 Munf. 345. The conversations were therefore proper to go to the jury, not as a complete basis of recovery, within themselves, but as facts and circumstances tending to rebut the presumption that the services were gratuitous, and to show the peculiar means adopted by the defendant to induce the plaintiff to remain quietly in his service, to promote his pecuniary interests, without expecting, on his part, to be called upon to compensate her therefor. The statute of frauds can not be used as an instrument of fraud. 3 Am. & Eng. Enc. Law, 860 ; 17 Am. & Eng. Enc. Law, 339; 8 Am. & Eng. Enc. Law, 658, 660, 661.

PLATE *v.* DURST. 69

The plaintiff asked the court to give the jury seven instructions. The court gave two, to both of which the defendant objected. The defendant asked for ten instructions. The court gave two modified, and gave six, and refused to give two. For this Court to copy into its opinion, and comment on all these instructions separately, is an unnecessary and burdensome task not required of it, in the due and orderly administration of justice, but would greatly interfere with the consideration of, and occupy the space belonging to other more weighty matters. And when the Court finds, on examination of the whole case, that substantial justice has been done, it will not reverse the judgment, simply to gratify litigious dispositions, for any error committed by the circuit court, unless such error, if it had not been committed, would have tended, in some measure to have produced a different result.

Defendant's counsel, in their able, scholarly, and exhaustive brief, complain of the admission into the record by the circuit court of "a mass of useless verbiage and trifling repetition," which they ask this Court to remedy. In view of the many exceptions and instructions, "useless in verbiage and trifling in repetition," with which the counsel have incumbered the record, their attention is respectfully called to the celebrated decision of a beam against a mote, with which they are familiar. Since, by the provisions of section 9, chapter 131, Code, this Court is required to consider the whole evidence, there appears no other way properly to do so, except on a certificate of the whole evidence just as it was taken in the circuit court, unless counsel mutually waive this provision, and certify the facts proven. The circuit court should be commended, instead of condemned, for obeying the law strictly, although it may uselessly add to the cost of litigation. The legislature, and not the court, should provide the remedy.

Most of the instructions asked by the defendant, and refused or modified, were based on the theory that the plaintiff was bound to prove a distinct or express contract; and they were modified by the court so as to include a mutual understanding, to be derived from the circumstances and relationship of the parties, and in no event could she recover unless it

appeared that the defendant expected to pay her for her services. These instructions were founded on the law as stated in the cases of *Riley* v. *Riley* and *Cann* v. *Cann*, before cited. Both those cases were suits against decedents' estates, wherein one of the alleged contracting parties was dead, and therefore the other was held to a strict compliance with the law. In this case both parties are alive, and both testify. If the defendant had been dead, and the plaintiff had just as fully established her case as she has done with him living, her right to recovery would have been unquestionable. *Thompson* v. *Stevens,* 71 Pa. St. 162; *Pollock* v. *Ray,* 85 Pa. St. 428; *Thornton* v. *Grange,* 66 Barb. 507; *Young* v. *Herman,* 97 N. C. 283 (1 S. E. 792); *Howe* v. *North,* 69 Mich. 272; (37 N. W. 213); *Hogg* v. *Laster* (Ark.) 19 S. W. 975. But the defendant being alive, and being permitted to testify that he had no expectation or intention of compensating the plaintiff for her services, but what he said with regard thereto was a mere jest, distinguishes this case from the cases above cited, so as to render the principle established by them to some extent inapplicable to the present case. His having fully established the want of intention or expectation on his part presents the question whether, in the absence of such expectation or intention, the law, against his will and protest, will compel him to pay her what her services were reasonably worth. In section 508, 1 Story, Cont., it is said that if a contract is understood by the parties thereto as a mere jest, it has no binding force. But it is also held that if one of the parties thereto accepted it in earnest, and acted thereon to his own detriment and loss, to that extent it would be binding and valid. *Armstrong* v. *McGhee* Add. 261; 1 Story, Cont. § 12, note 1. In Add. Cont. 24, it is said: "In a third class of cases the law prescribes the rights and liabilities of persons who have not in reality entered into any contract at all with one another, but between whom circumstances have arisen which made it just that one should have a right, and the other should be subject to a liability, similar to the rights and liabilities which exist in certain cases of express contract. Thus, if one man has obtained money from another through the medium of oppression, imposition, deceit, or by the commission of a trespass, such money may be recovered back;

PLATE v. DURST. 71

for the law implies a promise from the wrongdoer to restore it to the rightful owner, although it is obvious that it is the very opposite of his intention. Implied or constructive contracts of this nature are similar to the constructive trusts of courts of equity, and in fact are not contracts at all." When any deceit is practiced, by which a man obtains the labor, money, or other property of another, with the other's consent, in the expectation of recompense, although such deciever has no intention of paying therefor, but expects the benefit thereof—wholly without just recompense, the law implies a *quasi* or constructive contract; for it never permits a wrongdoer to take advantage of his own wrong, to the detriment or injury of another.

The plaintiff was deceived into the belief, by the kindness, conduct, and conversations of the defendant, that he intended to faithfully compensate her for her services, justly and fully, at such time as she might marry, or reach an age when she might feel like undertaking business for herself; and he thereby secured her careful attention, labor, and co-operation in the advancement of his business affairs.

But, before the time arrives for his meeting his promised undertaking, he gets rid of her, without fulfillment of such undertaking, and pleads that he was merely jesting, and that, as he never intended or expected to compensate her for her services he is entitled to them gratuitously. She testifies that she accepted his promises in earnest, and expected him to fulfill them. What course she might have pursued, had these promises not been made to her, it is impossible for us to say, except that, presumptively, at least, as soon as her eyes became open to her true worth, she would have asked him to pay her a just wage, or have sought other employment, although, on account of her tender years and female dependency, she may have hesitated to take such a step.

However this may be, his jesting promises, taken by her in earnest, were sufficient to justify the court in compelling him to treat her with fairness and honesty. The instructions, therefore, in so far as they required the existence of a distinct contract or a mutual understanding, were erroneous as to the plaintiff; but the jury having properly disregarded them, and found a verdict in her favor, in accordance

with the law as it should have been given them, they furnish no grounds for the reversal of the judgment thereon.

We therefore conclude that the circuit court did not err in refusing to give any of the defendant's instructions, or in giving any of the plaintiff's, but the errors committed were against the plaintiff, wholly.

Numerous exceptions were taken by the defendant as to the admission and refusal to admit evidence, but, if the circuit court erred in all of these (which is in no wise apparent, from our view of this case) such errors could not have possibly changed the just result reached. The judgment is therefore affirmed.