## CHARLESTON.

HARRY S. ALFRED *v.* J. P. SNYDER.

Submitted April 4, 1922.   Decided April 11, 1922.

1. WORK AND LABOR—*Presumption that Services Rendered for Member of Family are Gratuitous Generally Limited to Members Living Together.*

    When services are rendered between members of the same family there is a presumption that they are rendered gratuitously, but generally such presumption applies only to persons who are living together as members of the same family, and not to persons, though related, who do not so live together.  (p. 700).

2. SAME—*In Nephews Action Against Uncle for Services Rendered Defendant as Having been Gratuitous, Evidence Held to Support a Verdict for Plaintiff.*

    At the age of 12 years, plaintiff, who lived with his parents, began working on his uncle's farm about a quarter of a mile away.  He continued such work for the most part until he was 42 years old, performing substantial and beneficial services, for the last seven years having practically the entire management of his uncle's 600 acres of land, including the raising and harvesting of crops, and care of about 50 head of live stock; during part of this period he received from the

farm small quantities of potatoes, pasture for a cow and colt, and some timber. He made his home with his parents until he was married, at the age of 22, and then he and his wife continued living with them for about six years, when he moved with his family into and maintained a home of his own during the remainder of his period of service, at various places, varying from one to three miles from his uncle's farm. For the last several years of service, he spent a considerable portion, but not all, of his nights at his uncle's home, on account of his uncle's feeble condition, there being no one else to care for him at night except that for part of the time a nurse was employed. In an action by plaintiff against the uncle for services rendered, the defendant claimed that during the 30 years of service, plaintiff was a member of his family, and that the services were rendered gratuitously; such issue was properly submitted to the jury, and there being sufficient evidence to support the verdict, it will not be set aside. (p. 700).

Error to Circuit Court, Lewis County.

Action by Harry S. Alfred against J. P. Snyder. Verdict and judgment for the plaintiff, and the defendant brings error.

*Affirmed.*

*Brannon, Stathers & Stathers,* for plaintiff in error.
*Charles P. Swint,* for defendant in error.

MEREDITH, JUDGE:

Upon notice and verified account, plaintiff, on March 10, 1921, moved the circuit court of Lewis county for judgment for $14,800. Of this amount $13,725 is for services rendered by plaintiff for defendant as an employee upon his farm during the years 1891 to February, 1921, inclusive; $300 for money paid for defendant; and $775 for services rendered by plaintiff's minor son for the years 1916 to 1920 inclusive. Defendant pleaded non-assumpsit, the statute of limitations, and also filed off-sets amounting to $15,000, in which he seeks recovery for "use, rent and occupation of farm" for the years 1892 to February, 1921, inclusive, $14,750, and for "use of silo machine cutter", $250. The charges of each

party are made at so much per year, covering services on the one hand, and use, rent and occupation of the farm, on the other. The jury returned a verdict for plaintiff for $6,908.39, which the court refused to set aside. Judgment was entered on the verdict and defendant seeks reversal here on writ of error.

The defendant made various assignments of error; all but one have been practically abandoned. The only one relied on is that the verdict is contrary to the law and the evidence.

Plaintiff is defendant's nephew; his mother, now deceased, was defendant's sister. At the time of trial, plaintiff was 42 and defendant 82 years of age. In 1891 defendant and his brother Hezekiah Snyder, were the owners of a 600 acre farm located about three miles from Weston, upon which they resided. The two were never married.

Hezekiah died in October, 1914. The defendant, upon his brother's death, became sole owner of the farm, probably by will, though how is not affirmatively shown. Defendant has continued to reside there ever since. In 1891 plaintiff lived with his parents on a farm about a quarter of a mile from the defendant's residence. He was then about 12 years old. That year he entered upon the service for which he claims compensation in this action. The exact nature of the arrangement under which plaintiff entered this service is not clear. Plaintiff testifies that the two uncles hired him and that he expected compensation, but that the amount was not fixed. Defendant says ''He came there while a small boy * * * just like other boys, running around, fishing about the place, and continued to run around, was one of the family almost, in fact I had no family and liked to have a little fellow around'', but substantially denies that there was any understanding between them then that plaintiff was to be paid for his services. Whether there was any understanding between them then, or if there was, what it may have been, is not so material. The record shows that for a period of about 12 years, from 1891 to 1902, the date of plaintiff's marriage, he lived with his parents and worked for defendant and his brother, Hezekiah, on the farm, doing at first the light work usually

done by boys, and as he grew older and stronger he made a "full hand", performing all kinds of hard farm work. For some six years after plaintiff's marriage, he and his wife lived with his father, and he continued to work for his uncles on their farm. In 1904 he formed a partnership in the lumber and planing mill business, but he seems to have spent a considerable part of his time working on the farm, hiring some one to perform his share of the work in the firm. This firm continued till about 1912, when it failed. Plaintiff's account from 1901 to 1904 calls for $250 per year; from 1905 to 1907, for $300 per year; and from 1908 to 1912, for $350 per year. As these items were under the court's instructions barred by the statute of limitations they were not carried into verdict and judgment, but they clearly indicate the value which plaintiff placed on his services for that period. About 1908 plaintiff moved with his wife and children to Weston and shortly thereafter to a place near Polk Creek Bridge and near the defendant's residence, then to near Gee Lick Road.

At this time he walked a distance of a mile or two daily to work on defendant's farm. It is well established that his duties included the raising of feed and grain, building of fences, repairing buildings and machinery, ploughing and the usual farm work, and defendant admits these were performed in a satisfactory manner. Plaintiff did not at any time move his family to the Snyder farm, nor did he stay there prior to the death of his uncle Hezekiah, except occasionally to eat a meal, and possibly now and then to spend a night there. In no sense could it be said that during the period from 1891 to 1914 he made the Snyder home his home. Plaintiff had a home of his own at his father's from 1891 to about 1908, when he moved to Weston, and has kept and maintained a home for his family, consisting of his wife and five children, since that time at the places already stated, and in walking distances to the defendant's farm.

It appears that his Uncle Hezekiah was a very vigorous man practically up to the date of his death at the age of 82 years, and was a hard worker, the defendant not being so vigorous, and that after Hezekiah died the defendant was not

able to do much work on the farm and the plaintiff spent nearly all his time looking after defendant's interests. With the aid of hired hands he built three silos, yearly planted about eighteen acres of corn and filled them, raised corn, wheat, oats, harvested the hay crop, cared for some fifty head of live stock, principally cattle, and rendered himself useful in all the ways familiar to those who live on farms or who know what those ways are.  On account of the feeble condition of the defendant, plaintiff took practical management of the farm work, though the defendant was the "boss". He sold stock from time to time but always accounted to the defendant therefor.  During this period he frequently stayed at night at defendant's home, and especially so while defendant was sick.  The housework was done chiefly by two daughters of defendant's half-brother, Peter Snyder, who made frequent trips to the house.  Defendant for some months had a nurse.  The two nieces and nurse were paid for their services, though the amount paid the nieces was very little. But the real burden of looking after defendant was borne by plaintiff.  He managed the farm, looked after the buildings, fencing, machinery, crops and live stock.  During his thirty years of service he added very materially to defendant's wealth.  The defendant attempted to show that the plaintiff had the use of the farm products and thus maintained his family; that in that way he had been fully compensated for his work; that he had pasture for his cow and a colt part of the time and had the use of a farm tractor for two seasons which plaintiff used in operating a threshing machine, and used some timber from the farm in building a house.  But we think the plaintiff has shown that what little he got from the farm was credited to the defendant in his account; while it does not appear on the itemized account it was taken into consideration in making it up.  Besides, it is shown that the farm products obtained by plaintiff consisted of a few bushels of potatoes for some years, a little grain, and the timber used was not a material amount and was fully paid for. The services performed by plaintiff were of too substantial

. 90 W. Va.

a nature for us to believe that either party considered them paid for in the manner claimed by the defendant.

The defendant claims that plaintiff was a member of his family. He swears he always considered him "as one of the family almost". He may have been "almost" a member of his family, but not sufficiently so for his purposes in this case. In attempting to show that plaintiff never expected pay for his services, the defendant offered evidence to the effect that plaintiff became a bankrupt about 1912 and did not list in his assets any account against the defendant; but if plaintiff were a member of defendant's family, it is rather strange that he and his wife and children were never invited to live on the 600 acres, and especially so at that trying period. It appears that his bankruptcy was due to his partnership in the timber business, but it is quite possible that his constant and faithful service to the defendant, without receiving compensation therefor as he ought to have done, may have very materially contributed to his misfortune. Plaintiff moved a number of times, first into rented property and then into a house he built for himself, but never upon defendant's farm. True, plaintiff stayed with defendant at his farm for a considerable period during the last five years of service, working for him in the day time and caring for him at night, but this was all for the benefit of the defendant. The defendant was too feeble to attend to his farm, in fact, too frail to take care of himself. He is an old man, he was alone, and plaintiff thought it unsafe for defendant to remain alone at nights. We can not say as a matter of law that plaintiff at any time during his period of thirty years of service for defendant was a member of his family. There is no showing of that personal touch or that spirit of affection which impels members of one family to work for the pleasure and benefit of all.

True, plaintiff rendered no bill for his services during his period of service, but he kept an account of his services, and when he finally asked defendant for payment, defendant asked him to render him a bill. Before doing so, however, he

offered him $1000, which defendant claims was in the nature
of a gratuity. At that time plaintiff was about to buy a
farm in Ohio and needed money for his purchase. The re-
quest defendant made for an account of plaintiff's demand
and his admissions that he expected to compensate him over
and above what he proposed giving his other relations, and
his testifying that plaintiff had been a good "servant" all
tend to show that the defendant expected in some way to pay
him for his services.

Another circumstance repels the inference of family rela-
tionship. In this suit defendant filed off-sets against the
plaintiff for $15,000. Off-sets imply a contract. The defend-
ant said in effect that he did not owe the plaintiff, but even
if he did owe him any part of plaintiff's demand, yet the
plaintiff owed him $15,000 for use, rent and occupation of his
farm and the use of a silo machine cutter and which sum he
had promised to pay. By filing his off-sets he in effect sued
the plaintiff therefor upon an alleged contract. "Where a
party defends against a claim for services, on the score of
relationship, and that the services were compensated by
paternal care, etc., he should not, by his pleading, claim a
set-off for board, etc.; such charges imply that there was a
contract between the parties." *Schwarz* v. *Schwarz,* 26 Ill.
81. We think that considering the nature of plaintiff's de-
mand and defendant's off-sets, the defendant practically
admitted that there was a contract between them. Whether
there was an express promise to pay plaintiff is not impor-
tant; an implied promise was just as effectual and binding.
The plaintiff performed valuable services; the defendant
knowingly accepted them and greatly benefited thereby, and
the law implies on the part of the defendant a promise that
he would pay a reasonable compensation therefor. The jury
was so instructed and it so found.

When defendant was rendered the account by plaintiff, he
said in substance that the items for the earlier years of ser-
vice were alright, at least he had no substantial objection to
them. They started at $25 per year and gradually increased
to $400 per year up to the year 1914, when plaintiff charged

for the years 1914 to 1919 inclusive at the rate of $1200 per year, and for 1920, $1400 per year, and for the months of January and February, 1921, at $125 per month. We think the charges for the last seven years have been the cause of this litigation.    The defendant is an old man. He doubtless recalled the many years when farm hands worked from sunup to sun-down, and often far into the night for fifty cents per day; and when plaintiff's account was presented him we do not wonder that he pronounced it "preposterous."    We can almost hear him say it.    It aroused his indignation and he pronounced it a fraud and averred he did not owe the plaintiff anything.    But other farmers, the evidence shows, during this same period, paid equal or even higher wages. Doubtless they complained, too, but they paid nevertheless. What employer of labor has not complained in the last several years?    But living expenses have been high and laborers could not afford to work at former rates; nor could the defendant reasonably expect plaintiff to do so.    The evidence justifies the plaintiff in the amount claimed and the amount of the verdict is fully supported by the evidence of competent business-men and farmers, familiar with farm work and farm wages, and we are satisfied it is morally just.    The defendant by pleading the statute of limitations, has deprived the plaintiff of more than half of his claim,—his services for more than twenty-five years—and we would not do him further injustice by reversing the judgment and setting aside the verdict, unless the law so commands.

It is strenuously insisted by defendant's counsel that plaintiff was a member of defendant's family; that this is shown by the blood relation existing between them and by the circumstances detailed, and that if plaintiff was, in fact, a member of defendant's family, then it is presumed that the services performed by him were gratuitous, and that the evidence offered by the plaintiff is insufficient to over-come that presumption.    In determining questions of this character kinship by blood often plays an important part; but one may be a member of a family without being connected by blood or marriage to any members of it.    Again, one may be ever so closely related by blood to the members of a family,

yet in the legal sense in which it is involved in this case, not be a member of the family.    And there must be something more than mere living together, as a mere lodger or boarder in the family would not by that fact alone be a member of it.    Can we say that plaintiff was a member of defendant's family while he continued to live in his father's family and did not make his home with the defendant?    Or was he a member of defendant's family while he lived in a separate house with his wife and five children?    Until he was married, plaintiff was certainly a member of his father's family; and after he moved into a house of his own he was certainly a member of his own family.    It is rather incongruous to say he was a member of defendant's family in a separate house and at a distant place and at the same time also a member of his father's family or his own.

We can not say as a matter of law, from this record, that plaintiff ever lived with defendant, at any time, as a member of his family.    This question was submitted to the jury and defendant can not complain. It has been held that "The presumption that services are intended to be gratuitous applies only to services which are rendered between persons who are living together as members of the same family. The presumption does not exist as between persons who are related but who are not living together." 3 Page, Law of Contracts, Sec. 1454, citing: *McConnell* v. *McConnell,* 75 N. H. 385, 74 Atl. 875; *Winkler* v. *Killian,* 141 N. C. 575, 54 S. E. 540; *Brown* v. *Cummings,* 27 R. I. 369, 62 Atl. 378; *Williams* v. *Williams,* 114 Wis. 79, 89 N. W. 835; *Winter* v. *Greiling,* 114 Wis. 378, 90 N. W. 425.    There might be special circumstances under which this rule would not apply, but as a general proposition of law we think it is sound.

It would have been unnatural under the circumstances shown in this case for plaintiff to devote thirty of the best years of his life to a wealthy bachelor uncle without any expectation or understanding on his part that he would be compensated; and it would have been just as unnatural for the uncle to accept such valued services without any obligation on his part to pay for them.    The jury was fully justified in holding that the services rendered were not gratuitous

and that defendant impliedly, if not expressly, promised to pay for them. The parties were represented by able counsel and every phase of the case was fairly submitted to the jury, under proper instructions from the trial court. The law and evidence both justify the verdict and we therefore affirm the judgment.

*Affirmed.*