*In Re:* ESTATE OF ANNA A. SCOTT, *Deceased,* JOHN G. SCOTT, *Plaintiff in Error.*

(No. 9036)

Submitted May 7, 1940.   Decided June 4, 1940.

W. M. Lafon, for plaintiff in error.

*Alexander Falconer, G. Gilmer Easley* and *S. M. Austin,* for defendant in error.

Fox, JUDGE:

This case comes to us from the Circuit Court of Monroe County. A proceeding for the settlement of the estate of Anna A. Scott, deceased, originated pursuant to Code, Chapter 44, Article 2, before a commissioner of accounts who made a report upon which the County Court of Monroe County acted, and which finally was considered by the circuit court of that county upon appeal. The questions at issue are the right of John G. Scott, plaintiff in error here, to recover from the estate compensation for labor and services performed and rendered by him for Anna A. Scott in her lifetime, and the amount of such compensation. The commissioner of accounts made a finding in favor of John G. Scott for $3,897.00, with interest on $3,852.00 thereof from June 19, 1936, the date of decedent's death, until paid. The county court reversed the finding of the commissioner of accounts and allowed the said Scott to recover the sum of $10,494.00 with interest from June 19, 1936; the circuit court reversed the county court and re-

instated the commissioner's finding. The plaintiff in error asks a reversal of this ruling of the circuit court.

The issues involved are (1) whether the plaintiff in error was entitled to recover anything for the work and services performed by him, raised on cross-assignment of error; (2) whether, if entitled to recover, the statute of limitations barred such recovery beyond a period of five years preceding the death of Anna A. Scott; and (3) whether or not by reason of a letter appearing in the record, and which will be hereinafter considered, the right of the plaintiff to recover prior to March 1, 1929, was barred. The several points require a detailed statement of the facts as developed by the record.

J. Harvey Scott and Anna A. Scott lived together as husband and wife in Monroe County. No children were born of their marriage. John G. Scott, a nephew of J. Harvey Scott, lived with them for several years prior to 1908, at which time he removed with his parents to the State of Oklahoma. Harvey Scott died in the year 1918 and devised and bequeathed all of his property to his wife, Anna A. Scott, then about fifty-five years old. This property consisted principally of a farm of three hundred and ten acres in Monroe County, and certain livestock, farm equipment, etc. It appears that after the death of her husband, Anna A. Scott employed a farm manager who remained with her until the spring of 1919. In December, 1918, she made a trip to the State of Oklahoma for the apparent purpose of attempting to persuade John G. Scott, then a young man thirty-one years of age and unmarried, to return with her to West Virginia, and manage her farm and look after her business generally. She remained in Oklahoma until about the first of March, 1919, and while there, between Christmas and New Year's, made a proposition to John G. Scott that if he would return with her to West Virginia to manage her farm and look after her business affairs, on her death all her property would go to him, which, of course, involved either a conveyance of the property, effective at her death, or a bequest or devise thereof to him by will. At the time this proposition was

made, Scott was recovering from an attack of pneumonia, and it was made while he was in his room in the home of his mother and in the presence of several of his brothers and sisters, four of whom testified as to what occurred. This testimony comes from people who are presumed to be interested in the result of the plaintiff's present claim by reason of the close family relationship. Aside from this, there is no character of suspicion thrown upon these statements, and considering the circumstances as a whole, the Court is not disposed to say that their testimony was insufficient to establish the existence of the contract in question. In addition to the testimony of these close relatives, we find that about the first of March, 1919, John G. Scott came to West Virginia and remained on the Anna A. Scott farm, managed the same and looked after her affairs until her death, except for a period of about four months in 1928 and 1929, when he returned to Oklahoma on account of his mother's death, and remained there during the illness of a sister. No serious question is raised as to the services performed by John G. Scott during all of these years, and it cannot be denied that he gave his entire time to the management of the farm, engaging in no independent business on his own behalf; nor can it be overlooked that he devoted to the interests of Anna A. Scott the most productive years of his life, without receiving any compensation in the form of salary or wages. Furthermore, during these years, and up as late as two years before her death, Anna A. Scott repeatedly indicated her intention that at her death her property should go to John G. Scott, and spoke of him as having been the same as a son to her, saying, in effect, that her deceased husband, if living, would not be satisfied if anyone else should have his property, although it is shown by the record that during this period Anna A. Scott at times criticized the plaintiff in error. However, at no time was there any serious breach in their relationship, or any substantial departure from the duties imposed upon him under his alleged agreement with her.

We think it clear, therefore, taking the evidence as a whole, and considering all the circumstances, that the plaintiff in error has clearly established an agreement on the part of Anna A. Scott that in return for his services he was to have at her death the property of which she might die seized and possessed. She did not convey this property to him, nor did she make a will bequeathing and devising the same to him, and her failure to do so constituted a breach of her contract upon which he is entitled to assert his claim for compensation upon a *quantum meruit* basis.

We now come to the statute of limitations pleaded by the administrator. If it applies, then the plaintiff cannot recover for a period beyond five years next preceding the date when the statute ceased to run, but if it does not apply, then the plaintiff would be entitled to recover for the full period during which he performed services under the asserted contract. It must be observed here that the contract which we have held to have been established was not one for the payment of money, but was an agreement to transfer property at a future date, namely, at the death of Anna A. Scott. At no time during all the years in which John G. Scott was performing his part of the undertaking could he have instituted any character of action against Anna A. Scott to enforce this contract or to recover any sum of money or property thereunder. The statute of limitations begins to run from the date when a right of action accrues, and, therefore, if we treat the plaintiff as being entitled to recover by reason of the contract made in December, 1918, then it inevitably follows that the statute of limitations did not begin to run until Anna A. Scott breached the agreement, and that breach occurred at the time she departed this life without having vested John G. Scott with title to the property she then owned. It may be said that, strictly speaking, the plaintiff does not seek to enforce or recover under the contract, and that is true, because, under that contract, he was to receive her estate, not money as wages or salary. But the contract then entered into shows that his services were induced thereby

and were in no sense voluntary, and the contract being breached, he had the right to specific execution thereof, or compensation on a *quantum meruit* basis. By the very nature of the case the right of action not having accrued to the plaintiff until after the death of Anna A. Scott, the statute did not begin to run until her death, regardless of the remedy invoked. Can it be said that had a suit for specific performance been resorted to the statute or laches could have been relied on? If not, then can it be used to defeat a legal demand, having its original basis in the same contract, and which accrued at exactly the same time. That the statute of limitations does not apply in cases of this character has been held by this Court in *Plate* v. *Durst*, 42 W. Va. 63, 24 S. E. 580, 32 L. R. A. 404, and *Clark* v. *Gruber, Administratrix*, 74 W. Va. 533, 82 S. E. 338. These cases hold that where services are rendered upon an understanding that compensation is to be paid in a lump sum, the statute does not begin to run until the completion of such services and failure to compensate in accordance with the agreement. In the *Durst* case there is no particular reference to the effect of the statute of limitations, but it seems to be assumed that it did not enter into the picture. In *Clark* v. *Gruber,* a case closely analogous to that before us, it was held that under such circumstances the statute of limitations would not begin to run except from the time of completion of services or the happening of the contemplated event which was to be followed by compensation for the services. In this case the circuit court relying upon the ruling in *Clark* v. *Gruber*, correctly held that the statute of limitations did not apply, and for that reason permitted recovery from March 1, 1929, until the death of Anna A. Scott in June, 1936, a period of more than seven years.

The circuit court was of the opinion that the plaintiff could not recover for any services rendered prior to the 1st day of March, 1929, by reason of a letter written by John G. Scott to Anna A. Scott, dated the 1st day of February, 1929, which reads as follows:

"Meno Okla. Feb. 1-29

Dear Aunt I will write you a line this morning in reply to your kind letter enclosed with Dorises I guess everything has worked the way you had it planned a good while ago as you say for me not to write any more checks on you well I did not realize I was just writeing them on you as I had put all I had made in the last ten years in the bank in your name. I thought in case of death & sickness I had just as good a right to check on it as any one. Well I have not checked any that I did not need & if I can get along without it I will not but I had only fifteen dollars left & I will have to spend some all along so don't see where I will get any thing for railroad fare back to slave-share for you & for you to tell me just when to check and when not to So if you want me to come back you can give me permission to write a check & send me the blank or I will try to else. No there is no work & wont be any before the first of March you could not buy a job here now but when work opens up I will get something to do & pay you back what little I have spent as I can as I don't want you to be out anything on me for God knows you have donated enough to other people that did not give you anything in return. I think I earned my board & clothes & if I can pay what money back that I spend on this trip I dont think you can complain. (Paragraph) I guess Nell is doing all right she has been having lots of trouble (two lines here obliterated by time) This has been the worst winter I have ever seen here & it is just holding on. Lee Allen is very sick with the cold. (Paragraph) I guess you did not expect me to read the letter you wrote to Doris but I did I hope she told you just what you wanted to know as you can not believe anything anyone tells you. I dont care anything about what they told you as I have nothing to hide from any one I will close for this time As ever John."

This letter appears in the record without any explanation of anything which may have prompted its writing other than what appears therein. It was introduced by counsel for the administrator, and in so far as the state-

ments contained therein are self-serving as to John G. Scott, the administrator is bound thereby. From the letter it appears that all the money which had been received from farm activities on the farm of Anna A. Scott had been deposited in banks to her credit; and it otherwise appears that John G. Scott had the privilege of checking on these funds. Apparently, near the time this letter was written he had exercised this privilege to an extent which had irritated Mrs. Scott, and the letter under discussion indicates that she had written to a sister of John G. Scott, complaining about this situation, and that Scott had become aware of her complaint. Thereupon, he wrote the letter in which he indicated that he would pay back to Anna A. Scott "what little I have spent". He stated, "I think I earned my board & clothes & if I can pay back what money I spend on this trip I don't think you can complain". This statement is made in the face of his claim that the money he spent was drawn from the account of Mrs. Scott which included some of his own funds. The circuit court construed this letter as an admission by John G. Scott that at that time Anna A. Scott was not obligated to him in any way, and as refuting the existence of any contract. We do not so interpret the letter. To us it is quite evident that Scott at that time was provoked at the attitude of his aunt, and then had the intention to repay to her the money he had checked from her account. It is clear that this was a passing breach in their relationship, because within one month after this letter was written Scott was back in West Virginia, and for more than seven years thereafter managed the farm and looked after Anna A. Scott, in exactly the same way he had carried on for the ten years previous, and giving her particular care during her last days, at which time she apparently was not satisfied with the attentions of any other person. Then, too, under the agreement between these parties there was no money account between them at the time the letter of February 1, 1929, was written. John G. Scott had no money claim against Anna A. Scott at that time, because his contract did not contemplate any such claim. There-

fore, we consider the letter as merely evidence of a misunderstanding as to the amount of money which John G. Scott was entitled to use from Anna A. Scott's account, a misunderstanding which was cleared up immediately thereafter, and cannot be said to have any substantial effect on the original agreement. We think the court erred in limiting the plaintiff's right of recovery to services rendered after March, 1929.

There is included in the plaintiff's account an item of $1,152.00, covering compensation claimed for personal care and attention during the last illness of Anna A. Scott covering a period of two years, one month and eighteen days at forty-five dollars per month. The trial court was of the opinion that this allowance was excessive to the extent of $540.00, covering twelve months of the period charged for, and we do not feel disposed to disturb its finding on that point. We understand the court to have held that the allowance of forty-five dollars per month on a *quantum meruit* basis for the period beginning March 1, 1929, was reasonable, and we assume that having so held the same allowance should apply to the period from March, 1919, to March 1, 1929, for which we hold John G. Scott should be compensated subject to any proper deduction on account of his visit to Oklahoma in the fall of 1928.

The judgment of the Circuit Court of Monroe County is reversed and this cause remanded for further proceedings not inconsistent with the opinions herein expressed.

*Reversed and remanded.*