332 S.E.2d 269

**John G. GIBSON and Mildred V. Gibson**

**v.**

**Okey McCRAW, Jr., Executor of the Minnie Wood Estate.**

**No. 16492.**

Supreme Court of Appeals of West Virginia.

July 3, 1985.

258

Robert S. Jacobson, Lewisburg, for appellants.

Jesse O. Guills, Jr., Lewisburg, for appellee.

McGRAW, Justice:

This is an appeal from a final order of the Circuit Court of Greenbrier County, entered April 23, 1984, which denied the claims of the appellants, John G. Gibson and Mildred V. Gibson, against the estate of Minnie E. Wood. The appellants asserted that the decedent had breached a promise to compensate them for services they performed during her lifetime by leaving her entire estate to them at her death. The circuit court confirmed the report of the commissioner of accounts which disallowed the appellants' claims in their entirety on the ground that they had not demonstrated the existence of any contract, implied or express, for payment for services rendered during the decedent's lifetime. We find no reversible error in the circuit court's ruling, and we affirm.

The decedent, Minnie E. Wood, was the only sister of appellant Mildred V. Gibson. In 1965, the decedent came to live with Mrs. Gibson and her husband, appellant John G. Gibson, at their home in Greenbrier County near Lewisburg.[1] When the decedent arrived she was in ill health and had no financial resources. Although she subsequently obtained some money from a divorce settlement and from social security insurance, she apparently contributed little to the financial support of the household. During the twelve or so years the decedent lived with the appellants, she neither paid nor was charged for her room and board. Mr. Gibson, the sole financial support of the household, handled all of the decedent's financial affairs and invested her money in certificates of deposit and bank accounts in the names of the decedent and one or both of the appellants, jointly.

The decedent continued to reside with the appellants until January 1978, when there was a serious breach in their relationship.[2] The decedent moved into the home

---

1. At the time, the appellants were living in the home of and caring for Mr. and Mrs. Kisner, the parents of the decedent and Mrs. Gibson. The Kisners subsequently conveyed the house to the appellants.

2. It is not clear what caused the breach between the decedent and the appellants, although Mrs. Gibson intimated that it resulted from the decedent's alleged dependence upon prescription medication. In any event, the appellants had

of a friend for a brief time and engaged the appellee, Okey McCraw, Jr., to handle her financial affairs. The decedent executed her power of attorney to the appellee, and at her request, he began removing her investments from the joint control of the appellants and placing them in her name. The appellee also assisted the decedent in drawing up a will and arranged for her to be placed in the Andrew S. Rowan Memorial Home at Sweet Springs, Monroe County, where she died on November 9, 1979.

The decedent's will, dated March 8, 1979, was admitted to probate in the office of the County Clerk of Greenbrier County on November 14, 1979. It named the appellee as executor of the estate and made specific bequests of money to various individuals and institutions. The residue of the estate was bequeathed to the decedent's brother, Clyde E. Kisner. The will made no provision for the appellants, although they did receive a $4,000 certificate of deposit which was held jointly by the decedent and Mr. Gibson at the time of the decedent's death. The decedent's estate was appraised at a total value of $27,293.70, including all jointly held property.

On May 20, 1980, Mr. and Mrs. Gibson filed separate creditor's claims against the decedent's estate. Each of the appellants asserted a claim in the amount of $27,850 for services rendered the decedent from May 12, 1965 through January 31, 1978. In addition, the appellants asserted separate claims to recover the proceeds of two certificates of deposit and a savings account which had been disposed of under the will. In all, the appellants' claims totalled more than $76,000.

On May 22, 1980, the appellee filed affidavits denying the validity of the appellants' claims. By order entered July 7, 1981, the circuit court appointed a special commissioner of accounts for the sole purpose of taking testimony and ruling on the appellants' claims. An evidentiary hearing was conducted on July 10, 1981.

The evidence showed that while the decedent was living with the appellants, Mr. Gibson, in addition to handling the decedent's financial affairs, provided her with transportation and ran errands for her. Mrs. Gibson performed all the usual household chores for the decedent, including cooking, cleaning and laundry. It also appears that as the decedent grew older, she became more eccentric in her behavior and may have developed a dependency on prescription drugs. Although there was no claim that the decedent was an invalid or incompetent, the appellants asserted that eventually they were unable to leave her alone in the home and hired a woman approximately two years before the decedent left to come into the home once a week to bathe and look after the decedent. These services and the decedent's medication were apparently paid for out of the bank accounts the decedent held jointly with the appellants at the time. The appellants testified, however, that at no time did they draw upon these accounts other than to pay for such expenses incurred by the decedent.

The appellants' claims against the decedent's estate arose from an alleged promised on her part to reimburse them for their services by leaving them her entire estate at her death. The appellants admitted that they were incompetent to testify as to the alleged transaction under W.Va. Code § 57–3–1 (1966), but other witnesses testified that the decedent had made certain statements indicating her intention to compensate the appellants. Edward Gibson, son of the appellants, testified that the decedent told him that the appellants "were to get everything" upon her death. He also testified that the decedent told him that she had drawn up a will mentioning the appellants, but offered no details and produced no copy of this will. Maude Persinger, a cousin of Mr. Gibson, testified that she had participated in several conversations in which the decedent stated that she intended the Gibsons "to have what she had" to pay for her keep. A third witness, Jack Wallace, testified that he had heard the decedent state on several occasions that she wanted to reimburse the appellants for taking care of her, and that "she

no further contact with the decedent after she left their home.

had fixed things up so the Gibsons would be amply taken care of when she was gone for their taking care of her all the time."

On May 12, 1982, the commissioner submitted his report, disallowing the appellants' claims in their entirety. The commissioner found that the family relationship between the appellants and the decedent gave rise to a presumption that the services for which compensation was claimed had been gratuitously rendered and that the appellants had failed to overcome this presumption by clear and convincing evidence of the existence of a contract with the decedent for such compensation. The commissioner further concluded that even if the appellants had sustained their burden of proving an agreement for compensation, they had failed to prove the reasonable value of the services they rendered the decedent.[3]

On May 24, 1982, the appellants filed their exceptions, but, by order entered July 13, 1982, the county commission confirmed and ratified the commissioner's report. The appellants brought an appeal to the circuit court, which was denied by memorandum order entered March 15, 1984. The court found that the commissioner had correctly applied the law and that "there was sufficient evidence upon which the commissioner could base his finding" that the appellants had failed to meet their burden of overcoming the presumption of gratuitous service.

On April 17, 1984, the appellants filed a memorandum of exceptions and a motion to open, rehear and reverse the circuit court's ruling. The motion was argued in open court and, by order entered April 23, 1984, was denied. It is from this order that the appellants prosecute this appeal.

I

Initially, it should be noted that the appellants' claim is, in essence that the decedent's alleged promise to leave the appellants her entire estate gave rise to an oral contract to make a will which they seek to enforce against the decedent's estate. Although, "strictly speaking, an agreement to dispose of property by will cannot be enforced after the death of the promisor," *Gray v. Marino,* 138 W.Va. 585, 588, 76 S.E.2d 585, 588 (1953), courts have allowed claimants to recover against the estate of a decedent who contracted to make a will or to bequeath or devise property in exchange for performance of services in certain limited circumstances.

A valid oral contract to bequeath or devise property may be enforced against the estate of a decedent, as any other valid contract; but a contract of this character is viewed with suspicion and is not favored by the courts and, to be enforceable, it must be certain and definite in its terms, equitable, and based upon sufficient consideration, and it must be established by full, clear and convincing proof.

Syllabus point 1, of *Lantz v. Reed,* 141 W.Va. 204, 89 S.E.2d 612 (1955). *See also Davidson v. Davidson,* 72 W.Va. 747, 79 S.E. 998 (1913).

■ Specific performance of such a contract is particularly disfavored and will be granted only when the services rendered or the property or interest which the claimant asserts he was promised are "of a character that would make it 'impossible to estimate their value by any pecuniary standard.' [Citations omitted.]" *Hedrick v. Harper,* 135 W.Va. 47, 58, 62 S.E.2d 265, 271 (1950). *See also In re Estate of Murphy,* 140 W.Va. 539, 85 S.E.2d 836 (1955). On the other hand, the courts have recognized the right of a claimant who proves a contract to make a will in exchange for the performance of services to recover against the estate of the decedent in an action in the nature of *quantum meruit.*

One who is induced to and actually performs services upon the promise of another, that upon the death of the promisor her estate shall vest in the promisee

---

**3.** In addition, the commissioner concluded that any claims for services rendered prior to May 20, 1975 were barred by the statute of limitations under W.Va.Code § 44–2–12 (1982 Replacement Vol.). This finding was properly overruled by the circuit court on review and forms no part of this appeal.

as compensation for such services, is, upon the breach of such promise, created by the death of the promisor without the conveyance, devise or bequest of her estate to the promisee, entitled to recover from the estate of the promisor the value of such services, performed subsequent to such promise, and the statute of limitations does not begin to run against the claim for recovery until the death of the promisor.

Syllabus, *In re Estate of Scott*, 122 W.Va. 352, 9 S.E.2d 528 (1940).

■ The appellants in this case offered no evidence that the services they rendered the decedent during her lifetime or the property she allegedly promised to bequeath them were of such a unique character as to warrant specific performance of the alleged contract. Accordingly, their recovery, if any, must be limited to a claim for the reasonable value of the services they performed.

## II

The principal issue in this case is whether the circuit court and the commissioner of accounts erred in concluding that the appellants had gratuitously performed the services for which compensation is claimed. The general rule in such cases was stated in Syllabus point 4 of *Hurst's Adm'r v. Hite*, 20 W.Va. 183 (1882):

Where service is performed by one at the instance and request of another, and especially where that other is personally benefited by the service, the law implies a contract, that the party, who performs the service, shall be paid a reasonable compensation therefor, unless there be something in the relation of the parties or the circumstances of the case, which precludes the idea of such compensation; in which case there would be an implied agreement or understanding, that no such compensation was to be paid.

*See also Furman v. Hunt*, 135 W.Va. 716, 65 S.E.2d 1 (1951); *Keys v. Keys*, 93 W.Va. 33, 116 S.E. 681 (1923).

■ The relationship of the parties between whom services are exchanged as

members of the same family has been held to be one of the circumstances precluding the idea of compensation

[W]herever services are rendered and received, a contract of hiring or an obligation to pay compensation will generally be presumed. But qualifying the scope of this general rule of law, is another rule to the general effect that, in the absence of an express contract providing therefor, services rendered between near relatives living in the same household as members of the family are presumed to be gratuitous.

*In re Estate of Fox*, 131 W.Va. 429, 433, 48 S.E.2d 1, 4 (1948). *See also In re Estate of Thacker*, 152 W.Va. 455, 164 S.E.2d 301 (1968). Although in some jurisdictions the showing of the family relationship serves merely to rebut the presumption of an implied contract to pay compensation for services rendered,[4] in West Virginia it gives rise to a contrary and affirmative presumption that such services were performed gratuitously. *See Furman v. Hunt, supra; Ireland v. Hibbs*, 125 W.Va. 31, 22 S.E.2d 706 (1942).

The appellants contend that the circuit court and the commissioner of accounts erred in applying the presumption of gratuity in the first instance. The commissioner concluded that the presumption of gratuitous service arose from the mere fact that the decedent was the sister of Mrs. Gibson and the sister-in-law of Mr. Gibson.

■ The general rule is that, except perhaps in the case of a parent and child, the mere fact of relationship by blood does not, of itself, trigger the presumption of gratuity. Rather, it is the family relationship of the parties which gives rise to the presumption that services were performed gratuitously. In this context the term "family" has been held to mean "a collection of persons who form one household, under one head and one domestic government, and who have reciprocal, natural, or moral duties to support and care for each other." 66 Am.Jur.2d *Restitution and Implied Contracts* § 32, at 978 (1973).

---

**4.** *See* 98 C.J.S. *Work and Labor* § 16 (1957).

This rule has never been stated in these exact terms in West Virginia. Indeed, in a number of cases, the presumption has been stated as if it arises upon a mere showing of kinship. *See e.g., Furman v. Hunt, supra; Peters v. Altizer,* 127 W.Va. 92, 31 S.E.2d 552 (1944); *Ireland v. Hibbs, supra.* However, in each of the above cited cases, and indeed, in every case in which the presumption has been held to apply, it was evident that the parties were in fact living together as a family.

Moreover, it has been recognized that the circumstances surrounding the rendition of services are more important than the manner in which the parties are related. *Coleman v. Wallace,* 143 W.Va. 669, 104 S.E.2d 349 (1958). Thus, it has been held that the presumption does not apply in cases where the parties, though related by blood, were not living together as members of the same family at the time the services were rendered. *Alfred v. Snyder,* 90 W.Va. 693, 111 S.E. 832 (1922). By the same token, the presumption has been held applicable to persons who, though not related by blood, were in fact living together in a family relationship. *In re Estate of Fox, supra* (mother-in-law & daughter-in-law); *Clark v. Gruber,* 74 W.Va. 533, 82 S.E. 338 (1914) (father-in-law & son-in-law); *Thompson v. Halstead,* 44 W.Va. 390, 29 S.E. 991 (1898) (mother-in-law & son-in-law); *Plate v. Durst,* 42 W.Va. 63, 24 S.E. 580 (1896) (brother-in-law & sister-in-law).

■ Clearly then, it is recognized in West Virginia that the "family relationship" is the predominant factor in determining whether the presumption of gratuity applies in a given case. This is not to say, however, that the nature of the parties' relationship is unimportant. Perhaps the rule is best stated as follows:

Relationship by blood or marriage is of itself a factor bearing on the question of whether a family relation existed, and has a tendency to rebut any presumption of compensation which might otherwise arise. However, in the absence of a family status no presumption of gratuity precluding the implication of a contract for compensation will be raised by the single

fact of relationship by blood or by affinity, except, it has been said, in the single case of the natural relation of parent and child. [Emphasis omitted; footnotes omitted.]

98 C.J.S., *Work and Labor* § 16, at 742 (1957).

■ Under this rule, it appears that the commissioner of accounts did err in concluding that the presumption of gratuity arose merely from the fact of the decedent's kinship to the appellants. We are of the opinion, however, that this was not reversible error in this case, since the uncontested evidence shows that the decedent was, in fact, living with the appellants as a member of their household and not as a boarder or lodger. Under the cases herein cited there was a sufficient family relationship between the decedent and the appellants to trigger the application of presumption of gratuity.

■ We turn, then, to the appellants' contention that the circuit court and the commissioner of accounts improperly concluded that there was insufficient evidence to overcome the presumption of gratuity. In order to overcome the presumption of gratuity, the claimant must prove a contract or agreement to pay for services, express or implied, which induced the performance of such services.

"[T]he claimant must go beyond showing the rendition of the service, its value, and the fact that no remuneration has been received. In order to overcome the presumption that pay was not intended, it must be shown that at the start the recipient expected to pay and the performer expected remuneration. This may be shown by either an express understanding or by clear proof of circumstances from which it is necessarily implied."

*In re Estate of Fox,* 131 W.Va. at 434, 48 S.E.2d at 4, *quoting Ireland v. Hibbs,* 125 W.Va. at 36, 22 S.E.2d at 709. The burden on the claimant seeking to recover against the estate of a deceased relative has been stated as follows: " 'To establish a contract, express or implied, to pay compensation for personal services rendered a de-

ceased person in his lifetime, as against his estate, the evidence and circumstances in support thereof must be clear and convincing.' Point 2, Syllabus, *Furman v. Hunt,* 135 W.Va. 716, 65 S.E.2d 1 [1951]." Syllabus point 3, *In re Estate of Murphy, supra.*

The appellants assert that a contract to pay for their services should be implied from the evidence, particularly from the statements made by the decedent to others reflecting her intention to repay the appellants by leaving them her entire estate. There is nothing in the testimony, however, to indicate that the decedent's remarks were prompted by a sense of contractual obligation to the appellants. Such statements are ordinarily not given great weight and have been held insufficient to establish a contract for services which may be enforced against the estate of the decedent. *Lantz v. Reed, supra; Hedrick v. Harper, supra; In re Estate of Fox, supra; Swiger v. Evans,* 75 W.Va. 236, 83 S.E. 917 (1914). Moreover, other evidence in the record negates the idea that the decedent felt bound to compensate the appellants for their services. The appellee testified that when the decedent turned over her financial affairs to him, she made no statements indicating that she owed anything to the appellants for her care.

However, even if the appellees had demonstrated the requisite intent on the part of the decedent to compensate the appellants for their services, there is no evidence in the record to indicate that the appellants intended to charge the decedent for such services. Despite the serious breach in their relationship with the decedent in 1978, the appellants made no attempt to charge her for past expenses or services after she left their home. Nor did the appellants attempt to retain control over the assets they held jointly with the decedent. Instead, they voluntarily surrendered all interest in the joint assets when requested to do so by the decedent.

More importantly, however, Mrs. Gibson herself testified in a manner inconsistent with her assertion of an agreement with the decedent for remuneration. When asked whether she and her husband had ever drawn on the joint bank accounts set up with the decedent's money, Mrs. Gibson testified:

"No, unless there was some reason for it. For our own use we didn't take one cent. *We didn't want it. We thought we were helping her, being kind to her.* She had nothing when she came there, so that seemed to be an obsession with her was this money. She felt independent, and *we was helping her, not for our benefit, for hers."* (Emphasis added.)

Relying on this evidence, the commissioner of accounts found that the appellants did not intend to charge the decedent for their services during her lifetime and, therefore, did not demonstrate a contractual arrangement sufficient to overcome the presumption of gratuity.

In view of the evidence in this case, we are required to accept the findings of the commissioner. "The findings of a commissioner in chancery, on questions of fact, should generally be sustained unless not warranted by any reasonable view of the evidence and such findings are entitled to peculiar weight in an appellate court where they have been confirmed by the decree from which an appeal has been granted." Syllabus Point 1, *Baker v. Hamilton,* 144 W.Va. 575, 109 S.E.2d 27 (1959). It may well be that the decedent displayed inordinate ingratitude in excluding the appellants entirely from her will. However, the commissioner found no legally enforceable agreement which the court could enforce as a contract, and we cannot say that his finding was erroneous.

In view of our resolution of this issue, we find it unnecessary to reach the other assignments of error raised. For the reasons stated herein, the judgment of the Circuit Court of Greenbrier County is affirmed.

Affirmed.