## .CHARLESTON.

KENNEDY et als. v. BURNS et als.

Submitted September 23, 1919.   Decided October 7, 1919.

1.  MINES AND MINERALS—*Contract of Holder of Oil and Gas as to Organizing Corporation.*

   The conditions of an agreement between the owner of an undivided interest in an undeveloped oil and gas lease and another, whereby the latter is given the exclusive right, for a limited period to organize a company to be capitalized at $16,000.00, to take over and develop the lease by the sale of enough stock in the company to raise a sufficient sum of money to pay the expenses of drilling and equipping one well on the leased premises, in consideration whereof, and the further consideration of one-sixteenth of the capital stock of such company, "fully paid and non-assessable," to be issued to him, such owner agrees to transfer his interest in the lease to such new company, is not complied with by the organization of an unincorporated company and' the tender to such owner of a certificate showing the holder thereof is entitled to "one-sixteenth of all dividends from the proceeds of said company from the production of oil and gas" from the leased premises, and that one well is to be drilled without charge against his interest.   Such agreement contemplates the organization of an incorporated company.  (p. 705).

2.  FRAUDS, STATUTE OF—*Denial of Contract in Answer Raises Defense of Statute of Frauds.*

   A denial in the answer of the contract averred in the bill, requires plaintiff to prove a binding contract, and raises the defense of the statute of frauds.   It is necessary to plead the statute specially, only when the answer admits the contract averred.  (p. 706).

3.  SAME—*Defense Not Presented by Demurrer Unless Bill Shows Oral Contract.*

   Unless it appears from the bill that the contract sued on was oral, the defense of the statute of frauds is not presented by demurrer.  (p. 707).

4.  SAME—*Written Assignment of Oil and Gas Lease for More Than One Year Necessary.*

   A valid assignment or transfer of an oil and gas lease, or of an interest therein, for more than one year, can not be made except in writing.  (p. 707).

**84 W. Va.**

Appeal from Circuit Court, Kanawha County.

Suit for specific performance by W. A. Kennedy and others against L. D. Burns and others. Decree for plaintiffs. From a decree of the circuit court on appeal, reversing the decree below and dismissing the bill, plaintiffs appeal.

*Decree affirmed.*

*Maynard F. Stiles, C. J. Van Fleet* and *J. F. Cork,* for appellants.

*Leo Loeb, Berkeley Minor, Jr.,* and *Henry S. Cato,* for appellees.

WILLIAMS, JUDGE:

This suit was brought in the court of common pleas of Kanawha county by W. A. Kennedy, H. C. Nease, G. N. Hancock, M. C. Barger, M. A. Boland, S. B. Thomas, and C. J. Van Fleet against L. D. Burns, G. W. Stage, Samuel H. Meyers and A. C. Lawrence, to compel performance of a contract or option, made between Samuel H. Meyers and W. A. Kennedy and C. J. Van Fleet on the 18th day of July, 1918, and hereinafter described. That court granted plaintiffs relief by decreeing that, upon the payment by them of $2,250.00, with interest thereon from August 3, 1918, to the general receiver of the court, to be disbursed to the party or parties entitled thereto, when that question should be thereafter determined, defendants Samuel Meyers, G. W. Stage and L. D. Burns sign, seal, acknowledge and deliver to W. A. Kennedy, as trustee, a deed conveying the one-half undivided interest in the lease in question, which interest was to be held by him in trust for the benefit of himself and those associated with him in the Kennedy Oil Company, and upon their failure to execute the deed within ten days after payment of said sum, a commissioner was appointed and authorized to make such deed in their stead.

On appeal to the circuit court of said county, the decree was reversed and plaintiffs' bill dismissed, by a decree entered by said court on the 14th day of June, 1919. From the last mentioned decree this appeal is taken.

The contract, or option sought to be enforced by the bill was drawn to be executed by both Samuel H. Meyers and

H. F. Martin, joint lessees of an oil and gas lease executed
to them by Sarah A. Ramsey and H. M. Ramsey her hus-
band, on a lot of about one acre of land on Kelley's Creek in
Kanawha county, granting to the lessees the exclusive right
to explore for, and extract and dispose of those minerals, if
found, for a term of ten years and as long thereafter as oil
and gas should be produced from the premises. The option
contract was signed by said Meyers only. Shortly after it
was signed by him, Van Fleet and Kennedy purchased out-
right from Martin, and took a conveyance from him for his
interest in the lease, and it is not here involved. The con-
tract or option recites a consideration of $1.00, and contains
the following provisions, viz.: Kennedy and Van Fleet were
to have "the exclusive right for a period of sixty days"
from the date of the contract, "to organize a company and
take over to such company" the aforesaid lease, and upon
organization of said company, the lessees were "to convey
said lease to said company, in consideration of the issue to
said Meyers and Martin "of one-eighth of the total amount
of stock," issued or to be issued by said company, said stock so
issued, "to be fully paid, and non-assessable," and the con-
veyance of the lease to said company was to be in full con-
sideration of the stock to be issued to them. Said writing
also provided for the issue of $16,000.00 of capital stock at
par value, and obligated Kennedy and Van Fleet to raise
a sufficient amount of money to completely equip and drill one
well on the leased premises to the Berea sand, or to its esti-
mated depth. No company was incorporated, but Kennedy
and Van Fleet sold fractional parts, or interests in the lease to
certain other individuals, whom they associated with them-
selves, and formed an unincorporated company, under the
name of the Kennedy Oil Company. That company issued to
each member thereof certificates representing their respective
fractional parts or interests in the leasehold. On July 23,
1918, five days after the writing was signed, three of the
plaintiffs, Kennedy, Van Fleet and H. C. Nease, engaged
A. C. Lawrence, one of the defendants, to drill a well, said
Lawrence to furnish the necessary fund, and, in consideration
therefor, was to have fifty shares of the stock of said com-

pany, and Kennedy, Van Fleet and Nease agreed to reimburse him to the extent of 62½% of his outlay in drilling and equipping the well, provided it proved to be a producer of either oil or gas, or both.

Said company issued a certificate to said Samuel Meyers, certifying that he was the owner of "ten shares of the Kennedy Oil Company. Full paid and non-assessable," and stating that the owner thereof is entitled to the one-sixteenth of all dividends from the proceeds of said company from the production of oil and gas or any products therefrom on the Ramsey lease, and that one well was to be "completed without charge against this interest, which will be drilled to the Berea sand." The certificate is signed by W. A. Kennedy, President, and C. J. Van Fleet, Secretary, and it, together with a form of deed intended to be executed by said Meyers conveying his one-half undivided interest in the lease to W. A. Kennedy, was presented to said Meyers. He declined to accept it, or to execute the deed, on the ground that the conditions of the writing of July 18, 1918, had not been complied with, that the formation of a corporation was the only kind of company contemplated. However, he offered to sell outright his interest in the lease to Kennedy and Van Fleet for $2,250.00, payable $1,000.00 in cash and balance in six months to be evidenced by a good note. The exact date of this proposition does not appear, but it does appear that the money was to be paid and the note delivered on the following Saturday, which was the 3rd of August, 1918. Not having the cash in hand, Van Fleet swears he made arrangements with the Merchants & Mechanics Bank of Charleston to borrow the money, and went to the bank on that day for that purpose, and, finding the bank officer with whom he had arranged to get the money absent, he then immediately went to Meyers' place of business and saw his brother, Alex. Meyers, whose agency for Samuel Meyers is not controverted. Alex. Meyers conducted nearly all the negotiations respecting this matter. Van Fleet says he was then told by Alex. Meyers that it would be satisfactory if the money was paid on the following Monday; that he again went to the bank on Monday, and was notified that Mr. Meyers had

left a telephone message requesting Van Fleet to call him; that, instead of calling him by telephone, he went to see Meyers at his place of business, and was told by him that the deal was off. On the 7th of August Samuel Meyers conveyed his interest to the defendant George W. Stage, in pursuance of what Meyers swears was an agreement previously made, conditioned upon Van Fleet and Kennedy's failure to pay the money and deliver the note before Noon on Saturday, August 3rd. Stage thereafter, on the 15th of August, 1918, conveyed said interest to the defendant L. D. Burns. The court of common pleas evidently found, though it does not expressly so state, that neither Stage nor Burns was a *bona fide* purchaser.

The two principal defenses to the bill are, first, that the conditions of the option had not been complied with, and, therefore, the writing of July 18, 1918, never became a binding contract; and, second, that said Meyers did not thereafter, at any time, agree to sell his interest to Van Fleet and Kennedy, or either of them, at the price of $2,250.00, or at any other price.

The first defense is well taken. The terms of the option clearly indicate that an incorporated company was the kind of company contemplated, not an association of individuals, forming a partnership, unlimited in respect to the liability of its members. The writing provides that the company is to be capitalized at $16,000.00, and that the shares of capital stock to be issued to Meyers are to be fully paid and non-assessable. Only an incorporated company has the power to issue such stock. The liability of a shareholder in an incorporated company for the debts of the company is very different from the liability of an owner of shares or interests in the property or business of an unincorporated company, or a partnership. His lliabililty in the former affects only the stock owned by him, whereas in the latter, unless expressly limited in the manner provided by the statute, chapter 100 of the Code, his liability for the company's debts is unlimited. It is true the certificate tendered to Meyers states that he is not to be liable for any of the expenses of drilling one well,

but other expenses were possible, and for such he would be liable personally.

There is much conflict in the testimony as to the kind of company orally agreed to by the parties, but it is unnecessary to review the evidence in this opinion. It is evident therefrom, read in connection with the writing itself, that Meyers was anxious to provide against any failure liability that might arise out of the operation of the property. The conflicting evidence raises at least a serious doubt in our mind as to whether Meyers afterwards actually waived the condition requiring the formation of a corporation, and it is a well established principle of equity that, in order to entitle one to specific performance, all the material provisions of the contract must be distinctly and clearly proven. Equity will not enforce a doubtful contract for fear of doing a greater wrong by doing so than by leaving the parties to their legal remedy. Specific performance is not an absolute right, but an equitable remedy resting in the sound discretion of the court. *Reger* v. *McAllister,* 70 W. Va. 52; *Smith* v. *Mullen,* 113 Va. 671; and 12 Enc. Dig. Va. & W. Va. Cases, page 482.

Kennedy and Van Fleet employed A. C. Lawrance to drill a well, not according to the plan as stipulated in the agreement, which was to raise the necessary fund therefor by the sale of capital stock of the company, but instead, they agreed to give Lawrence, for drilling the well, ten-thirty-seconds of the working interest in the lease. Our conclusion is there has not been such substantial compliance with the terms of the option contract as entitles plaintiffs to have it performed by defendant Meyers.

The second ground of defense relates to the alleged contract for the sale of his interest in the lease by Meyers to Kennedy and Van Fleet, made about the 1st or 2nd of August, 1918. This is the contract of which the court of common pleas decreed performance. The bill alleges that Meyers agreed to sell his interest to Kennedy and Van Fleet for $2,250.00, payable $1,000.00 cash and $1,250.00 in six months, to be secured by a good note. It does not allege whether this agreement was made orally or in writing, hence, the defense o fthe stat-

ute of frauds is not raised by the demurrer, because, under the allegation, plaintiffs could prove either an oral or a written agreement. However, defendants' express denial in their answer, that no "such agreement gratuitous or binding was ever made," required plaintiffs to prove a binding contract. In view of this denial it was not necessary for defendants to plead specially the statute of frauds. *Barrett* v. *McAllister*, 33 W. Va. 738; *Argenbright* v. *Campbell*, 3 H. & M., opinion by Judge Tucker, page 164; and *Eaves* v. *Vial*, 98 Va. 134.

The oil and gas lease from Ramsey and wife to Meyers and Martin was for a period of ten years at least, and longer if oil or gas was produced, and was made in 1916. It, therefore, had nearly eight years to run from the date of the alleged agreement, and if oil or gas was discovered and produced within the term, its duration would become indefinite, and, hence, had to be, and was in writing. Clause six of the statute of frauds requires a "contract for the sale of real estate, or the lease thereof for more than a year" to be in writing in order to maintain a suit or action thereon. Chapter 98, Code. The lease itself being required to be in writing, an agreement to transfer or assign it, or any interest in it, must likewise be expressed in writing. Interest in or a demise of land, lying only in a grant, can not be sold or transferred except by writing. 1 Thornton on Oil and Gas, Sec. 101, supported by the following adjudicated cases: *Kingsley* v. *Siebrecht*, 92 Me. 23, 69 Am. St. Rep. 486; 1 Ventris, 362, 86 Eng. Rep. 233; and *Todd* v. *Bettingen*, 98 Minn. 170. It appears from the report of the case last cited that the plaintiff and defendant owned two elevator companies, and in consequence of negotiations between them, the former agreed in North Dakota to transfer his stock in one elevator to the latter in consideration of the transfer by him to the plaintiff of his stock in the other company and in addition the transfer of a certain elevator situated on a railroad right of way in Dresden, North Dakota. That agreement was mutually carried out by the parties in respect to the transfer of stock, but the defendant failed to transfer the elevator at Dresden, its transfer depending upon an agreement with the railroad company. The elevator had been con-

structed pursuant to an agreement between the railroad company and a private individual, who held the title for the elevator company, by which it gave the right to occupy a certain piece of land for a certain period, which extended beyond the period of one year from the time the agreement to transfer had been made between the parties to the suit. The elevator was so built as to make it necessary to cross the railroad right of way in order to get to it. Says the court in its opinion: "One legal effect of the agreement with the railroad company was to burden the land upon which the elevator stood with a servitude. It created an easement and conferred the right of ingress and egress over the land owned by the railroad company. It constituted an interest in the land and a lease for a period of more than one year, the transfer of which is void unless in writing." The same principle is recognized, although not directly decided, in a previous decision by the Supreme Court of Minnesota in *Penney* v. *Linn,* 58 Minn. 371. The following authorities are also in point and support the proposition, that a lease required to be in writing can not be assigned, nor an interest therein except in writing. *Briles* v. *Pace,* 35 N. C. 279; *Agati* v. *Gignoux,* Rob. (N. Y.) 278; *Smith* v. *Perkins,* (Ky.), 24 S. W. 722; *Chicago Attachment Co.* v. *Davis Sewing Machine Co.,* (Ill.), 28 N. E. 959. The Illinois statute of frauds is very like our own, and in the case last cited it appears that the lessee for a term of years had orally assigned the remainder of the term, which was for more than one year, and the Supreme Court of Illinois held the assignment came within the statute of frauds and was void, although there had been part performance by the collection of rents from the assignee by the landlord.

We affirm the decree of the Circuit Court.

*Decree Affirmed*