Robert L. Acker

*v.*

O. L. Martin

(No. 10390)

Submitted October 2, 1951.     Decided December 4, 1951.

*Joseph R. Curl, James G. McClure,* for appellant.

*Gilbert S. Bachmann, Melvin W. Kahle,* for appellee.

RILEY, JUDGE:

On January 11, 1950, Robert L. Acker brought this suit in equity in the Circuit Court of Ohio County against O. L. Martin to set aside a judgment in plaintiff's favor for damages for personal injuries, styled Robert Lee Acker, an infant, by Charles H. Bonnesen, his *guardian ad litem,* against O. L. Martin, which judgment was rendered on August 10, 1937, before J. Ed. Vensel, a Justice of the Peace of Clay District, Ohio County, and also to set aside a certain release, dated August 10, 1937, given to the defendant, O. L. Martin, in the infant's behalf by his parents.

The prayer of the bill of complaint is that the judgment and the release be declared null and void; that the defendant, O. L. Martin, be temporarily enjoined from using the judgment and release as a defense to an action for damages for personal injuries instituted by the plaintiff against the defendant in the Circuit Court of Ohio County on January 27, 1949, within one year after the petitioner had become of age, which action was based on the claim litigated before the justice during plaintiff's infancy and is still pending and undetermined on the docket of the circuit court; and that a permanent injunction issue enjoining the use of the judgment and release as defenses to the personal injury action.

On January 10, 1950, defendant filed special pleas to the declaration in the law action, setting up, first, the release executed by plaintiff's parents, and, second, the judgment rendered in the justice's court. The plaintiff answered the defendant's pleas, and the defendant demurred to the answers. On the same day the circuit court, after consideration of the pleadings, indicated that

he would enter an order sustaining the demurrers to plaintiff's answers and dismissing plaintiff's declaration. Thereupon, plaintiff moved for a stay of the entry of such order, and further proceedings in the law action were stayed until January 16, 1950. On January 10, 1950, the day on which the special pleas, answers and demurrers were filed, defendant Martin's counsel accepted a written notice that plaintiff would apply on January 16, 1950, for a temporary injunction restraining defendant from asserting as a defense in the law action the judgment of the justice and the release. On the following day plaintiff filed the instant bill of complaint and the case was remanded to be matured at rules. On the return day of the notice, January 16, 1950, the circuit court, after hearing arguments of counsel, granted the temporary injunction prayed for, which injunction was later by the final decree complained of made permanent.

On June 23, 1937, the plaintiff then being nine years of age, was struck by an automobile operated by the defendant, O. L. Martin, and injured. Forty-eight days later, on August 10, 1937, the plaintiff, by Charles H. Bonnesen, his *guardian ad litem,* instituted an action before J. Ed. Vensel, justice of the peace, primarily to confirm a settlement of plaintiff's claim for damages, and also a release in favor of the defendant, O. L. Martin, "his heirs, executors, administrators, insurers, successors and assigns, for and from any and all liability, claims, demands, controversies, damages, actions and causes of action on account of personal injuries * * * resulting to the undersigned from an accident which occurred on or about the 23rd day of June, 1937". This release was signed by "Arch B. Acker, Natural Guardian of Robert Lee Acker, a minor, Arch B. Acker, Father, Alice B. Acker, Mother", and was witnessed by Tom B. Foulk and Charles A. Bonnesen.

From the transcript of the justice's docket, made an exhibit with plaintiff's bill of complaint, it appears that the proceeding was brought and completed on the same day. It shows that Arch B. Acker, plaintiff's father, ap-

peared and made application for the appointment of Charles H. Bonnesen, as *guardian ad litem* for his infant son, Robert Acker, "to enable said Robert Lee Acker to bring an action against O. L. Martin for damages for a wrong." It also appears from the justice's transcript that Bonnesen was appointed *guardian ad litem* and agreed in writing to be responsible for court costs; that summons was issued on defendant for one hundred dollars damages for a wrong, providing for the appearance of defendant on August 16, 1937; that Tom B. Foulk, defendant's attorney accepted service and waived the statutory five-day period; that on August 10, 1937, at four o'clock in the afternoon plaintiff appeared in person and by his *guardian ad litem,* and defendant appeared by his attorney, Tom B. Foulk; that the justice found that the infant plaintiff, Robert Lee Acker, was injured through the negligence of defendant, O. L. Martin, and suffered bruises and lacerations on his face; that the justice was "satisfied that the amount sued for is a fair, equitable and just amount, and is for the best interests of the infant plaintiff"; and further that the plaintiff recover judgment against the defendant for the sum of one hundred dollars, with interest from the date of the judgment until paid and costs. The justice's docket further recites that on the same day the defendant by his attorney paid into court the sum of one hundred dollars, in full satisfaction of the judgment, and eleven dollars seventy-five cents in payment of the *guardian ad litem's* fee and costs, in the total amount of one hundred eleven dollars seventy-five cents.

The record in the instant suit discloses that plaintiff was born October 27, 1927; that he was injured on June 23, 1937; that he became of age on October 26, 1948; that within one year after plaintiff became of age, on January 27, 1949, he instituted the action of trespass on the case in the Circuit Court of Ohio County against O. L. Martin, in which the pleas setting forth the judgment of the justice and the release were filed.

Plaintiff's mother, Alice B. Acker, testified in the instant suit that the adjuster for the insurance company,

which carried defendant's public liability insurance, approached the Ackers several times for the purpose of effecting a settlement; that Charles H. Bonnesen, an associate of defendant's attorney, Tom B. Foulk, went to the Ackers and discussed with them his appointment as *guardian ad litem;* that the insurance adjuster told the Ackers that the injuries were slight; and that the insurance company had thousands of dollars with which to fight the claim. Mrs. Acker was asked, "Was any statement made in your presence at the squire's office relative to what the doctor thought about the boy's recovery", to which she answered, "When I told them I wasn't satisfied or not, they ask me if I was satisfied and I told them no, and Judge Bonnesen asked me why I wasn't satisfied. I asked if he would be satisfied if his boy was scarred up. I am sure, your Honor, it was said the boy wouldn't be scarred, that the scars would eventually go away, that he would grow out of them, that he was too young."

There is evidence to the effect that plaintiff is afflicted with headaches, fainting and dizzy spells, and that when he was comparatively young his weight increased greatly, due, according to Dr. Robert J. Reed, Jr., a physician appointed by the court, to a deficiency in the development of the male sex organs. However, there is no substantial evidence that plaintiff suffered headaches and was afflicted with fainting and dizzy spells as a result of the trauma which he received when he was struck by defendant's automobile on June 23, 1937.

The testimony of Dr. A. L. Shinn, who treated plaintiff for his injuries in the first instance, was taken by deposition in the State of California, where he was then located. With his deposition there was filed a report, dated July 6, 1937, concerning the plaintiff, Robert Lee Acker, which report shows that plaintiff was ten years of age, weighed fifty pounds, and was four feet tall; and that plaintiff's condition when he first examined him was "Semi-shock from loss of blood, lacerations bleeding profusely, large open laceration across left temple 6 clips inserted, long slant laceration down left side of face—3 inches long. 3

clips inserted." Under the heading "Permanent Disability" appears the following: "No—only probable scars"; under the headings "Total Disability" and "Partial Disability" there appears in each instance the notation: "No."; and under "Conclusion and Remarks" Dr. Shinn noted, "May leave permanent scar on left side of face and across left temple."

Defendant's attorney, Tom B. Foulk, who was also the attorney for the insurance company, testified that he laid Dr. Shinn's report, concerning plaintiff's injuries, before the justice of the peace on his desk some time before the trial. This report was not shown to plaintiff or his parents during the course of the proceedings in the justice's office; but Mrs. Acker testified she was shown a physician's report "as to the condition of the boy."

Defendant, in support of his contention that the decree of the circuit court, cancelling the judgment and release, and permanently enjoining the use thereof in the law action, takes two main positions: (1) The instant suit having been brought more than a year after plaintiff became twenty-one years of age, is barred on the ground of laches; and (2) the evidence bearing on the question whether the judgment and release were the result of fraudulent conduct on the part of defendant's attorney, Tom B. Foulk; plaintiff's *guardian ad litem,* Judge Charles H. Bonnesen; or the insurance adjuster, is not sufficient to warrant the decree complained of.

Defendant's first position that this suit having been brought more than a year after plaintiff became of age, plaintiff is barred on the ground of laches, in our opinion, is without merit. Plaintiff, Robert Lee Acker, was born on October 27, 1927; he became of age on October 27, 1948; and three months later, on January 27, 1949, he instituted an action at law, which was timely brought and, as heretofore stated, is pending and undetermined, awaiting the final determination of this suit in equity. Code, 55-2-12, relating to the limitation of time within which certain personal actions shall be commenced, as finally amended

and reenacted by Chapter 2, Acts of the Legislature, 1949, provides, in part, as follows: "Every personal action for which no limitation is otherwise prescribed shall be brought. (a) within two years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and (b) if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, * * *." Such delay as there was in the instant case was brought about by the delay of defendant in filing his special pleas. Though the law action was instituted on January 27, 1949, the special pleas were not filed until January 10, 1950, and on that very day plaintiff, by his attorney, gave written notice to the defendant that he would, on January 16, 1950, apply for a temporary injunction, as prayed for in the bill of complaint, which notice was accepted on the same day by the defendant's attorney; and on the following day, January 11, 1950, the instant bill of complaint was filed, and the matters arising thereon were heard and decided by an interlocutory decree of the circuit court on January 16, 1950, in which he granted to plaintiff the temporary injunction prayed for. Thereafter evidence was introduced, including that contained in the deposition of Dr. A. L. Shinn, taken in the State of California, after consideration of which, the circuit court, on February 15, 1951, entered the final decree upon which the defendant prosecutes this appeal, and in the same order filed a memorandum stating the court's view, which prompted the court to enter the decree. Thus, there was no unwarranted delay on the part of the plaintiff either in the prosecution of the law action or the bringing and prosecuting of the instant suit in equity. "Mere delay will not bar relief in equity on the ground of laches. 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.' *Bank of Marlinton* v. *McLaughlin*, 123 W. Va. 608, pt 2, syl." *Hoglund* v. *Curtis, et al.*, 134 W. Va. 735, pt. 2 syl., 61 S. E. 2d 642.

As there was no delay such as would cause the defendant to alter his position, or would raise a presumption of a waiver, the defendant's position that plaintiff was guilty of laches cannot stand. Especially is this so because whatever delay there was in the prosecution of the law action and the bringing of this suit was due to defendant's delay in the filing of his special pleas, setting forth the judgment of the justice and the release as matters of defense.

As the plaintiff in his suit in equity seeks to have the judgment and release set aside on the ground of fraud, and the circuit court, as indicated by the final decree and the court's memorandum filed in this record, found that the defendant, acting through the insurance adjuster and his attorney, was guilty of such fraud as would vitiate the settlement represented by the judgment and release, and that the *guardian ad litem* was derelict in his duties to plaintiff, we are guided by two rules in the appraisement of this case: (1) "In equity the finding of fact by the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless it is clearly wrong or against the clear preponderance of the evidence." *Bennett* v. *Neff,* 130 W. Va. 121, pt. 6 syl., 42 S. E. 2d 793; and (2) fraud is never presumed, but must be established by one who alleges it by clear and distinct proof. *Hunt* v. *Hunt,* 91 W. Va. 685, 114 S. E. 283; *Bennett* v. *Neff, supra; Kanawha Banking & Trust Co.* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225; *Tokas* v. *J. J. Arnold Co.,* 122 W. Va. 613, 11 S. E. 2d 759; *Lafollette* v. *Croft,* 122 W. Va. 727, 14 S. E. 2d 917.

Let us at this point examine the record to see whether it contains clear and distinct proof that the defendant, acting through the insurance adjuster, and defendant's attorney, was guilty of fraud, so that this Court can say that the trial chancellor's finding of fact that the settlement represented by the release and judgment was not clearly wrong, nor against the preponderance of the evidence. The record shows that the plaintiff received no permanent injury except an extensive scar or scars extending from the hairline down the forehead and to or almost to the lower jaw. For this there was a payment

of one hundred dollars, thirty-five dollars of which was retained for the payment of Dr. Shinn's bill for the emergency and subsequent treatment of plaintiff.

Mrs. Acker testified that at the office of the justice of the peace at the time of the hearing, she was asked if she was satisfied with the settlement and that she answered in the negative; that Judge Bonnesen asked her why, and that she replied, "I asked if he would be satisfied if his boy was scarred up. I am sure, your Honor, it was said the boy wouldn't be scarred, that the scars would eventually go away, that he would grow out of them, that he was too young." But this record also shows that Dr. Shinn's report was on the desk of the justice of the peace, which report shows that it was the physician's opinion that there was no permanent disability—"only probable scars"; and that the injury "may leave permanent scar of left side of face and across left temple." The doctor's report "as to the condition of the boy", which Mrs. Acker testified was shown to her, evidently was that of Dr. Shinn, the only physician's report appearing in the record. She testified she did not see Dr. Shinn's report filed in the office of the justice, but she was present in Dr. Shinn's office at the time he was completing suturing plaintiff's facial wounds, saw him adjust the last clip, and Dr. Shinn testified that, "Well, at the time I think I made a statement that he [plaintiff] probably would have a permanent scar on the left side of his face and across the left temple." Dr. Shinn was at that time the Acker's family physician. Evidently, Mrs. Acker and her husband relied upon him or they would not have consulted him, and apparently he made no misrepresentation to her, but on the contrary his evidence indicates that she was fully informed that her physician thought plaintiff would probably have permanent scars as a result of the injury. Undoubtedly, she relied, or should have relied, upon Dr. Shinn's statement to her in signing the release and participating in the settlement of the claim for personal injuries and should not have relied upon any statement of the insurance adjuster as to what opinion Dr. Shinn had as to the

probable permanency of the scars. She and her husband were dealing at arms' length with the adjuster: she and her husband knew he represented the insurance company with which defendant was insured, and we are at a loss to see why she should take his statement, if such were made, in the face of Dr. Shinn's positive statement to her concerning the probability that there would be permanent scars. The adjuster was in a position of hostility in serving the interests of the defendant and the insurance company to Mrs. Acker and her husband, a fact of which she evidently had knowledge, and she should have known that the insurance adjuster was not a person qualified to render any opinion as to the probability of permanent injuries. She testified that Judge Bonnesen, her son's *guardian ad litem,* made no statement to her concerning the probability of permanent scars. If Mrs. Acker knew, as this record discloses she did, that the scars on her son's. face would probably be permanent, why did she sign the release?

Mrs. Acker's testimony that Herman A. Brague, the insurance adjuster, told her and her husband that the insurance company would spend thousands of dollars to fight the claim, is denied by Brague. However, because the factual finding of the circuit court on the question of fraud was in favor of plaintiff, we must take Mrs. Acker's testimony as true, under the ruling of this Court in the case of *Bennett* v. *Neff, supra,* pt. 6 syl. Whether, however, the testimony of Mrs. Acker is true or false, it forms. no basis for the cancellation of the judgment and release, for the reason that the Ackers, knew, or should have known, that the insurance adjuster represented the insurance company and the defendant, and was in a position of hostility to them; and for the further reason that there is nothing in this record to indicate that the statement of the adjuster, if made, was, in fact, false.

This case differs from the case of *Carroll* v. *Fetty,* 121 W. Va. 215, 2 S. E. 2d 521, in which an undertaker, having in his keeping for burial purposes the corpse of the Carroll. child, refused to bury the body unless the parents, who.

had not the means to do so, would pay the funeral expenses, conspired with the insurance adjuster, to the end that the Carrolls were induced to sign a release of the claim for the child's death in an inadequate amount in order to have the body of their child decently buried. This Court, in holding that the jury was entitled to find the release was procured by duress, said, at page 221 of the opinion: "Nor do we condemn the commendable practice of prompt settlements by tort-feasors. This record, however, contains a state of facts seldom encountered in the settlement of tort liability. It does, however, present a reification of the perils, which at times attend persistent and zealous efforts to settle claims with parties on a greatly unequal basis. Where an adjuster seeks to make an adjustment he does so at the risk which the particular situation offers." In the *Carroll* case, the Carrolls signed the release without the advice of an attorney, and, to a large extent, on the advice of an illiterate relative. In the instant case, the plaintiff was represented by his *guardian ad litem,* a reputable attorney practicing at the bar of the Circuit Court of Ohio County, and there is in this record a dearth of any wrongdoing on his part or anything which would besmirch his good name.

Nor can it be said that the plaintiff's parents regarded the payment as grossly inadequate. They, in the first instance, offered to settle with the adjuster for two hundred dollars, and the settlement in the amount of one hundred dollars was the result of a compromise, which occurs in the settlement of most claims.

And, finally, we are of opinion that the learned trial chancellor did not have before him proof of fraud sufficiently clear and distinct to justify the setting aside of the release and declaring the judgment void.

This holding renders moot the controverted question whether at the time plaintiff reached his majority, he had the whole or any part of the money paid in settlement of the instant claim; and whether, as a condition precedent to the obtaining of the relief prayed for in this

equity suit, he should tender the amount of money paid by the defendant in the justice's court.

We therefore reverse the final decree of the Circuit Court of Ohio County.

*Reversed.*