FRENCH C. LANTZ, *et al.*

*v.*

PAUL W. REED, *Executor, et al.*

(No. 10700)

Submitted September 20, 1955. Decided October 25, 1955.

*George M. Kittle, Frank G. Kittle,* for appellants.

*Harry Friedman,* for appellees.

HAYMOND, JUDGE:

In this suit in equity, instituted in the Circuit Court of Barbour County in June, 1952, the plaintiffs, French C. Lantz and Maria A. Lantz, seek a decree of specific performance against the defendants, Paul W. Reed, executor of the will of William C. Kisner, deceased, and in his own right, Ruth Alexander, Mary Pauline Reed and Charles F. Reed, of an alleged oral agreement entered into in 1947 between the plaintiffs and Kisner, by which he promised to bequeath to the plaintiffs certain personal property and to devise to them certain real estate consisting of two lots and a dwelling situate in Belington, Barbour County, West Virginia.

The bill of complaint contains among other averments this allegation: "That said William C. Kisner, then and there being a widower and without children of his own, being so possessed of said lots on which there is erected a valuable dwelling and other improvements, requested plaintiffs to move into said dwelling with him where he then resided and agreed orally with plaintiffs that if they, said plaintiffs, would move into said dwelling with him and make their home with him there as long as he should live and treat him as a member of their family, keep house, pay all utilities and provide food for the table and care for him in said home other than medical attention, that he, said William C. Kisner, would upon his death de-

vise and bequeath to said plaintiffs all his household goods and personal property located in and used at said dwelling at the time of his death, together with said lots and the dwelling-house and improvements thereon." The bill of complaint also alleges that the plaintiffs in all respects performed their part of the agreement but that William C. Kisner failed to comply with the agreement and, by his will dated September 7, 1951, which was duly probated on May 29, 1952, in Barbour County, bequeathed the personal property in the dwelling, and other personal property, to the defendants Paul W. Reed, Ruth Alexander, Mary Pauline Reed and Charles F. Reed, and devised the lots and the dwelling and the improvements on them to the defendants Ruth Alexander and Mary Pauline Reed.

The prayer of the bill of complaint is that the alleged agreement between the plaintiffs and William C. Kisner be specifically enforced; that the personal property be impressed with a trust in favor of the plaintiffs in the hands of the defendant Paul W. Reed, executor of the will; that he be required to transfer and deliver such property to the plaintiffs; that the real estate also be impressed with a trust in favor of the plaintiffs; that the defendants Ruth Alexander and Mary Pauline Reed be required to convey it to them by good and sufficient deed; and that the plaintiffs be granted general relief.

To the bill of complaint the defendants entered their demurrer in writing which the court overruled. The defendants then filed their answer in which they denied the material allegations of the bill of complaint and pleaded the statute of frauds as a defense to the oral agreement alleged in the bill of complaint.

The case was heard upon depositions of numerous witnesses produced in behalf of the respective parties and exhibits filed with the depositions.

By final decree entered June 11, 1954, the circuit court found that the evidence introduced by the plain-

tiffs did not establish the alleged contract, denied the relief prayed for in their bill of complaint, dismissed the bill of complaint, and awarded costs against the plaintiffs. From that judgment this appeal was granted b this Court on September 27, 1954, upon the petition of the plaintiffs.

The controlling question presented by the assignments of error of the plaintiffs on this appeal is whether the proof offered by the plaintiffs establishes an agreement between them and William C. Kisner, as alleged in the bill of complaint, which may be specifically enforced in a court of equity. The plaintiffs contend that they have proved a valid contract between them and William C. Kisner by which he agreed to bequeath the personal property and to devise the real estate to them, as alleged in the bill of complaint, and that they are entitled to a decree of specific performance of the contract in the suit. On the contrary, the defendants insist that the plaintiffs have failed to prove any contract between the and William C. Kisner.

Prior to 1947 William C. Kisner resided on a farm in Barbour County, a short distance from the City of Belington. During his residence there his wife died and the plaintiff Maria A. Lantz, whose maiden name before her marriage to the plaintiff French C. Lantz was Maria Findley, lived in the Kisner home as a domestic and after his wife died attended and cared for Kisner and acted as his housekeeper for several years. While residing there she and French C. Lantz were married and they planned to move to Belington, rent a dwelling, and establish their home at that place. After some consultation between them and Kisner, who was an elderly man and who was afflicted with an ailment which affected his kidneys and his bladder and required daily care and attention, he decided to come to Belington to reside. On October 28, 1947, he purchased from Nora McCauley and Jewel McCauley, her husband, real estate fronting on Brown Avenue, in Belington, which consisted of two lots

and a dwelling located on them, for which he paid in cash the sum of $2600.00, and obtained a deed for the property. When possession was delivered to him in November of that year he and the plaintiffs, at his request, moved into the dwelling and lived in it together as their home. The plaintiffs, who were not related to Kisner and were not required to pay rent, resided there until the death of Kisner in May, 1952, and they were still in possession of the home and the personal property owned by Kisner on the premises at the time of the institution of this suit.

Not long before his death, the exact time not being definitely shown, Kisner bought a home in Grafton and lived there for a short period. He then returned to his home in Belington where he continued to reside until his last illness during the final stage of which he was. confined to a hospital in Grafton where he died on May 27, 1952. It seems that during the short time he lived in his home in Grafton he notified the plaintiffs to remove from the dwelling in Belington and had a notice to that effect served on the plaintiff Maria A. Lantz. The plaintiffs, however, did not leave the premises. At that time and on other occasions while Kisner and the plaintiffs were living together in Belington minor disputes occurred between them. Sometime after the plaintiffs moved into the residence in Belington and while they were living there with Kisner, their daughter, Carol, was born and Kisner formed an attachment for the child. While the plaintiffs lived with Kisner they attended and cared for him, looked after the home, worked in the garden, and furnished and paid for the utilities and all or most of the food. The plaintiff French A. Lantz made some repairs to the property and the plaintiff Maria A. Lantz nursed and cared for Kisner, prepared the meals, cleaned the house, and did the washing in the home.

Kisner did not bequeath the personal property in the residence or devise the real estate to the plaintiffs but by his will, dated September 7, 1951, which was admitted to probate in Barbour County on May 29, 1952, he

bequeathed the personal property and other property owned by him to the defendants Paul W. Reed, Ruth Alexander, Mary Pauline Reed and Charles F. Reed and devised the real estate to the defendants Ruth Alexander and Mary Pauline Reed.

Numerous witnesses, produced in behalf of the plaintiffs, testified with reference to the alleged agreement. The testimony of each of them related to statements made by Kisner to or in the presence of the witness at different times and on different occasions during the period between the purchase of the property by him and his confinement in the hospital.

Jewel McCauley, one of the grantors in the deed to Kisner, testified that Kisner when purchasing the property told him that he would buy the property if it suited the plaintiffs and that it was to be their home as well as his home. Nora McCauley, the other grantor in the deed, testified that Kisner told her that he did not want to buy the property until he knew that the plaintiffs were satisfied with it because it was also to be their home. Ernest Turner, a deputy assessor, testified that when he visited Kisner to assess his property in 1952 Kisner told him that the plaintiffs were good to him and that "what little I have I expect them to have it" for caring for him.

Henry Ervin who lived across the street from the Kisner residence in Belington testified that in a conversation with Kisner he said that he "promised" the Lantzes "when he came up there that he would give them the property if they would go and take care of him."; that Kisner told him at different times that the property belonged to them; and that about two years after the plaintiffs moved to the Kisner home Kisner told him that he had made a will and left all the real estate and "Everything that was there." to "Mr. and Mrs. Lantz and the baby." This witness also testified that a few days before Kisner went to the hospital he said that "everything there belonged to French." Mrs. Vallie Ervin, the wife of Henry Ervin, testified that on one occasion, the date

of which she could not fix, Kisner said he "was going to give them everything that was there — the house and furniture and the two lots, was going to make it to French and Maria and Carol for keeping him."

Roxie Pratt testified that on one occasion Kisner told her in his home in the presence of her husband, since deceased, that he had bought the property to have the Lantzes live with him; that "it was to be hers."; and that he "bought the little house" and said "if they would move in and take care of him it would be their's when he was gone." She also testified that on another occasion, at her home in Parsons, when the Lantzes and their baby were present, Kisner said "I don't think that I can ever do her justice, but when I am gone she is well provided for."

Lee Keyser, a neighbor who lived about 200 yards from the Kisner residence in Belington, testified that Kisner told him that the Lantzes were good to him and that he would give them the property; and that the witness had that conversation with Kisner shortly after he bought the property in Belington. Paul Lantz, brother of the plaintiff French C. Lantz, testified that on several different occasions Kisner told him that he intended the Lantzes to have "what he had." and that "if they would stay with him that he would give them the home." Arkie B. Coontz, a grandson of Lee Keyser who resided with him, testified that in a conversation he had with Kisner about two or three months before his death Kisner told the witness that he wanted Mrs. Lantz to have everything he had because she had been "so good" to him. Dr. Thomas L. Woodford, who had been Kisner's physician both before and after he moved to Belington to reside, testified that Kisner said to him on more than one occasion that he told the Lantzes that they could have his home if they would take care of him. Dee Rowan, who purchased from Kisner the property in which he lived before he moved to Belington, testified that Kisner told him that

he bought the property in Belington as a home for him and "French and Maria."

The foregoing testimony of these witnesses is, in substance, all the evidence introduced by the plaintiffs to prove the alleged oral agreement between them and Kisner. The statements which these witnesses say Kisner made to them, except the statement which the witness Roxie Pratt testified was made by Kisner at her home in Parsons when the plaintiffs and their infant daughter were present, were uttered on occasions when neither plaintiff was present; and all of them, except the statement to Henry Ervin that Kisner promised the Lantzes that he would give them the property if they would take care of him, merely indicate that Kisner intended that the plaintiffs should have the property, or that he would give or transfer it to them, without any action by him to carry his intention into effect, or were mere declarations against interest, such as the statements to the effect that the property was, or was to be, the property of the plaintiffs or one of them. The statements attributed to Kisner by the various witnesses have different meaning and effect. Some of them refer to each plaintiff, others to both plaintiffs, and still others to both plaintiffs and their infant daughter.

The defendants introduced in evidence a letter written by the plaintiff, Maria A. Lantz, signed "The Lantzs", and sent to Kisner while he was in the hospital at Grafton, a few days before his death. This letter, addressed to "Dear U. Bill," was received by the defendant Ruth Alexander, who took it to the hospital and there read it to him, and contains, among others, these statements: "I know you were awful mad at me when you left. I blame others influence for everything you have ever done or said to us. Get well and get home so we can finish paying you and get our deed. You can stay as always and it won't cost you one cent. I'll do the best I know how as long as I can take care of you. If that's good enough." The words "Get well and get home so we can

finish paying you and get our deed" indicate the existence of some arrangement or agreement by which the plaintiffs were to purchase and pay for the property and obtain a deed for it instead of the alleged oral agreement upon which the plaintiffs rely by which Kisner was to bequeath and devise the property to them by a will.

The defendant Paul W. Reed testified that on one occasion he went to the residence at Belington when Kisner was ill and that at that time the plaintiff Maria A. Lantz told him that she had given Kisner a check for $10.00 as "a payment on the house" but that Kisner had never "cashed it." In her testimony she denied that she made that statement to him. Reed also testified that he went to the residence in Belington, after Kisner died, and obtained from the plaintiff Maria A. Lantz a box which Kisner had told him to get; that the box was locked; that she gave him the box and the keys to it; and that it contained the will of Kisner and some other papers. The defendant Ruth Alexander testified that while Kisner was in the hospital at Grafton she had a conversation at the hospital with the plaintiff Maria A. Lantz in which she told the witness that she "was buying" the house at Belington and had paid $1,000.00 on it. This statement the plaintiff Maria A. Lantz also denied in her testimony.

A valid oral contract to bequeath or devise property may be enforced against the estate of a decedent, as any other valid contract; but a contract of this character is viewed with suspicion and is not favored by the courts and, to be enforceable, it must be certain and definite in its terms, equitable, and based upon sufficient consideration, and it must be established by full, clear, and convincing proof. *Davidson* v. *Davidson*, 72 W. Va. 747, 79 S. E. 998. In that case this Court held in point 2 of the syllabus that: "An oral contract to make a will, if certain and definite in its terms, and upon sufficient consideration, if equitable, is valid, and enforceable against the estate of a decedent, as any other valid contract."; and in point 3 of the syllabus that: "Contracts

of this character, however, are viewed by courts with suspicion, are not favored, and to be enforceable must be upon sufficient consideration, be equitable, and definite and certain in their terms, and clearly proven."

Specific performance of a contract to make a will, even when its terms are clear, certain and unambiguous, is not a matter of right but rests in the sound discretion of the court to be determined from all the facts and circumstances. *Gray* v. *Marino*, 138 W. Va. 585, 76 S. E. 2d 585; 57 Am. Jur., Wills, Section 201. "A court of equity will grant relief by the specific performance of a contract to bequeath or devise property only where good conscience and natural justice are in accord with the enforcement of the agreement; and that court scrutinizes closely the circumstances of an agreement to make a will and requires full and satisfactory proof of the fairness and justness of the transaction before lending its aid to the enforcement thereof." 57 Am. Jur., Wills, Section 201.

In *Miller* v. *Miller's Ex'r.*, 2 Va. Dec. 97, 21 S. E. 471, the Supreme Court of Appeals of Virginia, in holding that an alleged agreement by a deceased brother of the claimant to give him certain property by his will had not been proved, used this pertinent language which is quoted in the opinion of this Court in *Gray* v. *Marino*, 138 W. Va. 585, 76 S. E. 2d 585: "It is a serious matter, when a man dies, for a claimant to come forward, and demand the estate, upon the ground that deceased had in his lifetime verbally promised or agreed to make a will giving his estate to said claimant, and that, too, in the face of a will which has given it to some one else. Such a claim naturally excites surprise, and a court of equity will always require the clearest and most convincing proof to sustain such a claim."

In the *Gray* case this Court held, in point 1 of the syllabus, that the evidence to establish an oral agreement to bequeath or devise property must be full, clear and convincing. The evidence introduced in behalf of the plaintiffs, who as parties were, by Section 1, Article 3,

Chapter 57, Code, 1931, disqualified to testify in regard to any personal transaction or communication between them and Kisner, does not prove the agreement between them and him, as alleged in their bill of complaint, or indeed any agreement of that character, does not satisfy the requirement that evidence to establish a parol contract to bequeath or devise property must be full, clear and convincing. The statements of his intention and the declarations against interest by Kisner, as to which witnesses for the plaintiffs testified, are not of great weight and are not sufficient to establish the alleged agreement between him and the plaintiffs. See *Gray* v. *Marino,* 138 W. Va. 585, 76 S. E. 2d 585; *Peters* v. *Poro's Estate,* 96 Vt. 95, 117 A. 244, 25 A. L. R. 615; 57 Am. Jur., Wills, Section 186. The testimony of the witnesses in behalf of the plaintiffs does not show that any of them, or any other person, was present when the alleged agreement between the plaintiffs, or either of them, and Kisner, was made, or heard any statement of its terms and provisions, or heard the parties to it say that they agreed to or accepted them. In that respect the evidence of the existence and of the terms of the alleged agreement in the case at bar is weaker than the evidence of the alleged agreement to make a will involved in *Gray* v. *Marino,* 138 W. Va. 585, 76 S. E. 2d 585.

In the *Gray* case the plaintiff Gray sought to establish and obtain specific performance of an oral contract by which Mrs. Myrtle Ritchie, a widow, agreed to will him the property owned by her at her death if he would live in her home, where she feared to reside alone, and stay there each night as long as she lived and operated the business in which she was engaged in a part of the same building. She executed a will by which she gave him her property but by a subsequent will she devised her property to the defendants. A witness in behalf of the plaintiff testified that he, Gray and Mrs. Ritchie were together in her home and that he heard on that occasion a conversation between her and Gray in which she asked him to come to her home and stay with her

at night and told him she was afraid to be there alone and if he would stay with her she would give him what she had at her death and that Gray said he would. Another witness testified that she was present on another occasion with Gray and Mrs. Ritchie and heard her say that she was obligated by her will to give him everything she had if he would stay with her and that she had told him that if he would stay with her and be there at night she would will him everything she had. A third witness testified that she told him, at one time and on two or three other occasions after Gray had come to her home to live, that she had promised Gray that if he would move into her home and remain with her each night she would will him her property. The circuit court found that the alleged agreement had been established and entered a decree of specific performance in favor of the plaintiff. On appeal this Court held that the evidence introduced by the plaintiff, in the light of other established facts and circumstances among which were the execution of the second will, the absence of Gray from the home of Mrs. Ritchie at different intervals, and his marriage to another woman four days after Mrs. Ritchie entered a hospital where she died without returning to her home, was not sufficient to establish the alleged agreement, reversed the final decree, and dismissed the plaintiff's bill of complaint.

The plaintiffs cite and rely upon *Tearney* v. *Marmion*, 103 W. Va. 394, 137 S. E. 543; *Turner* v. *Theiss*, 129 W. Va. 23, 38 S. E. 2d 369; and *Pair* v. *Rook*, 195 Va. 196, 77 S. E. 2d 395.

The *Tearney* case and the *Turner* case are not in point upon the vital question of the sufficiency of the evidence to establish the alleged agreement between the plaintiffs and Kisner and do not apply to or control the decision in this case.

In *Pair* v. *Rook*, 195 Va. 196, 77 S. E. 2d 395, the Supreme Court of Appeals of Virginia, affirming the trial court in sustaining demurrers to the original bill

of complaint and the amended bill of complaint and in denying leave to file a supplemental bill of complaint on the ground that those pleadings failed to allege an agreement to make a will which was certain, definite and unequivocal in its terms, denied the plaintiffs relief in equity in a suit to establish an oral agreement by a husband with his wife to make a will which would benefit the plaintiffs. In the opinion the court said: "Applying the principles stated to the case before us, we think there are two sound objections to the interference of a court of equity in this case. First, the agreement relied on is too uncertain and indefinite in its terms. It is based on allegations of a most general and indefinite nature. Second, the acts of part performance alleged do not of themselves refer to any agreement, or show that they were done in pursuance thereof, or resulted from such agreement. In other words, they are not of such an unequivocal nature as to be evidence of the existence of any agreement."

*Gray* v. *Marino,* 138 W. Va. 585, 76 S. E. 2d 585, also cited by the plaintiffs, applies to the case at bar and is authority against the contention of the plaintiffs that their proof establishes the alleged agreement and entitles them to a decree of specific performance in this suit.

The finding of the circuit court that the proof adduced by the plaintiffs did not establish the alleged contract between them and Kisner is neither clearly wrong nor against the preponderance of the evidence. The general rule, often stated and consistently adhered to and applied by this Court, is that in equity the finding of fact of the trial chancellor will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence. *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Rohrbaugh* v. *Rohrbaugh,* 136 W. Va. 708, 68 S. E. 2d 361; *Acker* v. *Martin,* 136 W. Va. 503, 68 S. E. 2d 721; *Holt Motors* v. *Casto,* 136 W. Va. 284, 67 S. E. 2d 432; *Adams* v. *Ferrell,* 135 W. Va. 463, 63

S. E. 2d 840; *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Hurley* v. *Hurley,* 127 W. Va. 744, 34 S. E. 2d 465; *Smith* v. *Smith,* 125 W. Va. 489, 24 S. E. 2d 902; *Hardin* v. *Collins,* 125 W. Va. 81, 23 S. E. 2d 916; *Crouch* v. *Crouch,* 124 W. Va. 331, 20 S. E. 2d 169; *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore,* 117 W. Va. 355, 185 S. E. 845; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England,* 85 W. Va. 101, 101 S. E. 73; *Bailey* v. *Calfee,* 49 W. Va. 630, 39 S. E. 642.

As the evidence introduced by the plaintiffs is not sufficient to prove the agreement alleged in the bill of complaint, the decree of the Circuit Court of Barbour County denying the relief prayed for by the plaintiffs and dismissing the bill of complaint, being clearly right, is affirmed.

*Affirmed.*