ESTOL MULLINS

*v.*

CHARLIE C. GREEN, *et al.*

(No. 10976)

Submitted September 23, 1958. Decided November 11, 1958.

*D. Grove Moler, Ray Toler,* for appellants.

*Kingdon & Kingdon, Arthur Ritz Kingdon, Paul D. Blackshear,* for appellee.

Browning, Judge:

John W. Green, a widower, died August 26, 1952, survived by two sons and four grandchildren, the children of a deceased daughter, Catherine Mullins. He died intestate as to his personal estate, but left a will, dated February 20, 1951, which was duly admitted to probate, by which he devised real estate, consisting of approximately 225 acres situate in Wyoming County, in equal parts to his two sons, describing each devise by metes and bounds.

The heirs at law of Catherine Mullins, including the plaintiff herein, Estol Mullins, contested the will in the Circuit Court of Wyoming County, on the ground that John W. Green lacked the requisite testamentary capacity at the time the will was executed. The Circuit Court of Wyoming County, in March, 1954, entered an order adjudging the will valid and denying the relief prayed for, from which order this Court denied an appeal on November 22, 1954.

Subsequently, on August 12, 1956, plaintiff brought the instant suit seeking specific performance of an oral contract on the part of John W. Green, hereinafter referred to as testator, to make a will in plaintiff's favor. The original bill of complaint alleges that in October, 1946, testator verbally agreed with plaintiff that if plaintiff would move from his home in McDowell County to testator's land in Wyoming County and erect thereon, at plaintiff's expense, a combined grocery store and apartment, and thereafter care for, shelter and support plaintiff's mother, the daughter of testator, testator, at his death, would give and devise to plaintiff a one-twelfth undivided interest in such land, to include the portion on which the buildings were erected, the one-twelfth to be plaintiff's "heir's" share, as determined by the laws relating to intestacy, should testator die intestate after the death of plaintiff's mother. The bill then alleges full performance by plaintiff and concludes with the above mentioned prayer for specific performance. An amended

bill of complaint was subsequently filed wherein it is alleged that, for the consideration set forth in the original bill, testator agreed to give and devise to plaintiff a one-third undivided interest in said land, the one-third interest being that to which plaintiff's mother, then a presumptive heir at law, would be entitled to receive in the event testator died intestate.

Defendants answered denying the alleged contract and, in addition, asserting that any such contract would be unenforceable under the Statute of Frauds, and an issue having been directed out of chancery, a jury was impaneled and the case proceeded to trial. At the conclusion of the trial, the jury returned a special verdict wherein it found that testator had made the contract as alleged in the amended bill of complaint, that is, to devise to plaintiff a one-third interest in the land, and that plaintiff had fully performed his part of such agreement. The trial court disregarded the special verdict of the jury, and, on November 27, 1957, found that a contract had, in fact, been made, but that such contract called only for a devise to plaintiff of one-twelfth of the land, and entered a decree granting the relief prayed for to the extent of one-twelfth, to which judgment this Court granted an appeal on March 31, 1958.

Errors assigned in this Court may be summarized as follows: (1) There was insufficient evidence to support a finding that any contract existed, especially one calling for one-twelfth, which proportion was in no way relied upon by plaintiff; (2) the court erred in admitting the testimony of Lucy Bell and Estol Mullins as to the purported contract; and (3) the court erred in rejecting certain letters of counsel, representing the heirs of Catherine Mullins in the will case, to defendants' counsel, wherein an offer to purchase the land surrounding the store building was made.

The testimony adduced in behalf of the plaintiff is to the effect that: Plaintiff had taken care of and supported his mother and three sisters since his father's death in

1931; in 1946, plaintiff and his family were residing in McDowell County, the plaintiff operating a small grocery store, on land leased at a rental of $5.00 a year; plaintiff's mother and Lucy, a sister, were residing in an adjoining dwelling; in October, 1946, plaintiff's mother and Lucy were in Kimball, a small town in McDowell County, and met testator and had a conversation with him; over objection plaintiff was asked: "Were you informed by your mother, Catherine Mullins, or by anyone else that Mr. Green promised that if you would come over into Wyoming County and build a place there for your mother and for your own home and take care of your mother there and your own expenses, that he would will you your mother's heir's interest in his property when he died?", and answered: "That is correct."; thereafter plaintiff moved to Wyoming County and erected a storeroom with an apartment upstairs and a small two room dwelling house for his mother, both of which were within 300 or 400 yards of the house in which testator lived; approximately one-half of the lumber used in the construction of the buildings was cut from testator's land, for which no payment was made; plaintiff expended approximately $6,000.00 in erecting the buildings; and, the original language of the bill in calling for only a one-twelfth interest was a mistake on the part of plaintiff's counsel, and that plaintiff had at all times claimed a one-third interest under the agreement.

Lucy Bell testified, over objection, that she had accompanied her mother to Kimball at the time they met testator and that testator said: "He could build anywhere he wanted to, that he wouldn't lose it, that he aimed for him to have his mother's heir's part if he taken care of me and her." She also testified that soon thereafter she married and moved elsewhere and did not accompany her mother to Wyoming County, although she visited her mother for short periods in the home erected by plaintiff, and, after her husband went into military service in August, 1948, she moved in with her mother and remained until after her mother's death in

1949; that she purchased groceries from plaintiff; and that plaintiff supplied wood and other things for his mother.

Plaintiff's mother-in-law testified that testator had told her that he intended for plaintiff to have his mother's share of the property, and other witnesses testified that in conversations with testator they inferred that plaintiff had some right to the property.

Defendants' evidence consisted mostly of the testimony of close relatives and frequent visitors of the testator, to whom no mention of any such contract was ever made by the testator. There was testimony in defendants' behalf that in the years 1945 and 1950, testator executed written leases of property similarly situated to that claimed by plaintiff, which leases provided for the construction of buildings on the property, the buildings to revert to the lessor (testator) upon expiration of the terms. One of these leases was for the term of five years at no rent, and the other rent free for the first year, with an option to renew from year to year upon payment of $15.00 rent. There was also testimony by counsel for the devisees in the will contest that plaintiff had made statements to them that he was to occupy the land rent free for five years, then pay $1.00 rent for each year thereafter, which testimony was contradicted by counsel for plaintiff who was also present at the time the statements were purportedly made.

Both the appellants and the appellee, by assignment and counter-assignment of error, complain of the final decree of the Circuit Court of Wyoming County in decreeing a 1/12 undivided interest in the tract of land in controversy to the plaintiff by virtue of the alleged parol agreement between the plaintiff and the deceased John W. Green. This Court agrees with both, inasmuch as the amended bill alleges that the agreement provides for plaintiff to have a 1/3 interest in this land, and there was no evidence in the record as to any agreement relating to a 1/12 interest. If for no other reason, the final

decree of the Circuit Court of Wyoming County would have to be reversed. "In decreeing specific performance, however, the Court has no power to decree performance in any other manner than according to the agreement. * * *" *Miller* v. *Jones*, 68 W. Va. 526, 71 S. E. 248, 36 L. R. A. (N. S.) 408. It is true that the original bill alleged a contract for one-twelfth, but it was superseded by the amended bill, and the suit was tried upon the latter. The court, therefore, had no power but to enforce the contract as alleged in the amended bill according to its terms or not at all.

That a contract to make a will is controlled by the same rules and principles, and enforceable as other contracts, is well established by decisions of this Court. *Lantz* v. *Reed,* 141 W. Va. 204, 89 S. E. 2d. 612; *Gray* v. *Marino,* 138 W. Va. 585, 76 S. E. 2d. 585; and other cases cited in the opinions of those cases. When one or more of the parties to such an alleged contract is dead, the person attempting to assert it is confronted with the provisions of Code, 57-3-1, as amended, often referred to as the Deceased Person's Statute: "No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, * * *." Thus, it is the firm public policy of this State, as expressed by that statute, for obvious reasons, that the person who is living shall not be permitted to testify regarding any personal transaction, or communication between him and the deceased person. By virtue of that statute, the plaintiff was not a competent witness to testify regarding the alleged contract between his grand-

father and himself. Plaintiff merely testified that his mother and sister had a conversation with testator in Kimball and that his mother subsequently related the substance of the conversation to him. The question also arises whether plaintiff's sister, Lucy Bell, was a competent witness in his behalf as to the terms of the alleged contract, since, according to her version, she and her mother were third party beneficiaries of the contract. However, we do not deem it necessary to decide upon the admissibility of the testimony of either of these witnesses since, under our view of the case, the evidence is insufficient, even assuming such testimony was admissible, to sustain a decree in plaintiff's favor.

The evidence is clear that the plaintiff did, for some reason, move on to the land in question and erect the buildings that have been heretofore described, sometime after the alleged conversation between Lucy Bell, her mother and John W. Green in the latter part of the year 1946. There are other circumstances, including the allegations in the original bill of complaint, the amended bill of complaint and the amended and supplemental bill of the plaintiffs, one of whom was the plaintiff in this suit, Estol Mullins, in the statutory *devisavit vel non* suit attacking the will of the deceased John W. Green. The last mentioned pleading reads in part as follows: "These plaintiffs, further complaining, say that on or about the year 1946 John Green, the deceased, who is the father of *Marton* Green and grandfather of the plaintiffs, caused his daughter, Mary Catherine Mullins, now deceased, to build certain houses on a portion of the land owned by her father, John Green, now deceased, and during the years 1946-47 *Edsel* Mullins, son of Mary Catherine Mullins, erected a store building, with apartment over said store and a two room residence for Mary Catherine Mullins, on said property, which said houses were erected within about one hundred yards of where John Green lived and died; that *Edsel* Mullins offered to buy said property, but that he was informed by John Green that one of his sons had offered to buy it, but he would not

sell to him, nor would he sell to *Edsel* Mullins, because they would inherit said property at the death of said John Green, and that John Green never during his lifetime ever intimated that he had changed his mind, but that when he was ready to dispose of his property, the plaintiffs, sons and daughters of Mary Catherine Mullins, now deceased, and grandchildren of John Green, now deceased, would each share equally in his estate at his death, * * *."

While it is not controlling, the fact that the deceased, subsequent to the date of the alleged agreement with the plaintiff, made a will in which he devised to others the property claimed by the plaintiff is also a circumstance that must be considered. The burden of proof required to establish a parol contract to devise real estate, even when the parties thereto are living, "must be full, clear and convincing." *Lantz* v. *Reed, supra; Gray* v. *Marino, supra; Davidson* v. *Davidson,* 72 W. Va. 747, 79 S. E. 998; and other cases and texts cited in the *Lantz* and *Marino* opinions. The 6th Syllabus Point of the *Marino* case reads: "A court of equity views with suspicion a suit to require specific performance of a parol agreement to devise real property and in such case will look not only to the direct proof adduced, but to the surrounding circumstances, as shown by the evidence, in determining whether or not such relief will be granted." This Court has gone even further and held that equity will not lend its aid to the specific performance of a parol agreement, even though clear and unambiguous, unless from all the facts and circumstances the Court is convinced that such agreement is fair, just and free of suspicion. *Gray* v. *Marino, supra; Kennedy* v. *Burns,* 84 W. Va. 701, 101 S. E. 156; *Cooper* v. *Cooper,* 65 W. Va. 712, 64 S. E. 927.

It is the finding of this Court, upon the evidence in this record, that the contract alleged in the amended bill of the plaintiff has not been proved by the full, clear and convincing evidence which is required in such a case. The construction of the buildings by the plain-

tiff, and the other acts of the parties, may be explained in too many ways inconsistent with the terms of the alleged agreement. In *Gray* v. *Marino, supra,* we quoted with approval the following statement from *Miller* v. *Miller's Ex'r.*, 2 Va. Dec. 97, 21 S. E. 471, an early Virginia case, which is here reiterated: "It is a serious matter, when a man dies, for a claimant to come forward, and demand the estate, upon the ground that the deceased had in his lifetime verbally promised or agreed to make a will giving his estate to said claimant, and that, too, in the face of a will which has given it to some one else. Such a claim naturally excites surprise, and a court of equity will always require the clearest and most convincing proof to sustain such a claim."

The decree of the Circuit Court of Wyoming County is reversed.

*Reversed.*